### ATCHISON, TOPEKA & SANTA FÉ RAILROAD CO. v. FRANK G. JAQUES.

1. TAXES, *When Imposed and Payable.* Taxes, as taxes, and for the purposes of their payment, were, in the year 1873, lawfully imposed upon any particular and specific piece of land then taxable on the first day of November, and not earlier.

2. ―――――― Where A. and J., on the 16th of September 1873, entered into a written agreement for the sale and purchase of a certain particular and specific piece of land, A. being the vendor, and J. the vendee, and the vendee was to take possession of the land and use it, and to pay for the same in eleven annual payments, and then to receive a conveyance therefor, and said agreement also contained the stipulation that the vendee should regularly and seasonably pay all such taxes and assessments as may be hereafter lawfully imposed on said premises, *held*, that the taxes of 1873, which became due on November 1st of that year, and then became a lien on the land, were not lawfully imposed on the land until the 1st day of November, and that J. then became liable to pay them.

### *Error from Lyon District Court.*

IN September 1873, *Jaques* purchased from the *Railroad Company* two quarter-sections of land, on credit, taking contracts from the vendor reciting the terms of sale and purchase. The taxes for that year on said land amounted to $65.15. Such taxes not being paid, the lands were sold by the county treasurer for the delinquent taxes, and struck off to Oscar F. Bretton and H. W. Graham, who afterward assigned and transferred the tax-sale certificates to the *Railroad Company*. *Jaques* claimed that the taxes should be paid by the *Railroad Company*, and an amicable action was brought in the district court of Lyon county for the purpose of determining whose duty it was to pay the taxes. The parties stipulated, that—

"If the court decides that it was the duty of *Jaques*, plaintiff, to pay said taxes, judgment shall be rendered generally for the defendant. If the court decides that it was the duty of the defendant, the *Railroad Company*, to pay the taxes, judgment shall be entered in favor of the plaintiff for the surrender and cancellation of said tax certificates, and for costs against the defendant."

The district court at the September Term 1877, found and decided that the *Railroad Company*, under the contracts of sale and purchase, was to pay the taxes, and gave judgment in favor of *Jaques* in accordance with the terms of the stipulation. The *Railroad Company* brings the case here on error.

*Ross Burns*, and *J. G. Waters*, for plaintiff in error.

*Cunningham & McCarty*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The only question involved in this case is the following: At what date in the year 1873 were taxes, as taxes, and for the purposes of their payment, lawfully imposed upon any particular and specific piece of land then subject to taxation?

It seems that on the 16th of September 1873, the plaintiff and defendant entered into a written agreement for the sale and purchase of a certain particular and specific piece of land situated in Reno county. The land was sold on credit. The plaintiff was the vendor, and the defendant the vendee. The defendant was to take possession of the land, to have the use of the same, and to pay for the same in eleven annual payments, and then to receive the conveyance therefor. Said agreement also contained the following stipulation:

"The second party (the defendant) agrees * * * that he will regularly and seasonably pay all such taxes and assessments as may hereafter be lawfully imposed upon said premises."

The taxes imposed on said land for that year, were, state taxes, county taxes, and such other taxes as the county commissioners were authorized to levy. The state taxes of that year were imposed, in one sense, upon property in general, by the act of the legislature, approved 6th March 1873, (laws of 1873, page 222,) which act fixed the rate per cent. at which state taxes should be levied. The county taxes of that year, and indeed of prior and subsequent years, were imposed, in

one sense, upon property in general by the act of the legislature of 1868, (Gen. Stat. 1019, et seq.,) which act provided for the assessment and collection of taxes. But evidently this kind of imposition of taxes was not the kind of imposition of taxes which the parties had in contemplation when they made said agreement. Lands were assessed that year subsequently to the third Wednesday of April, and prior to the 20th of June, but as of the first day of March; (laws of 1870, p. 245; Gen. Stat. 1032;) and the county commissioners on September 1st of that year determined the amount, and rate per cent., of all the county taxes, and of all the other taxes which they were required by law to levy; (Gen. Stat. 1044, § 72.) This may perhaps be called an imposition of taxes upon property in general, yet it can hardly be called an imposition of taxes upon any specific property, or with reference to the payment of the taxes by any particular owner or owners. On or before the 20th of June, the assessor delivered the assessment-list to the county clerk. On the first Monday in July, the county board met to equalize the assessments of the county. On the second Monday of August, the state board of equalization met to equalize the assessments of the state. On the first Monday of September, (as before stated,) the county commissioners fixed the rate and amount of taxes to be levied in their county. And after that time, and before the first day of November, the county clerk determined the amount of the taxes that each individual should pay on each piece of land, placed such amount on the tax-roll, and then, on the first day of November, delivered the tax-roll to the county treasurer; and then, for the first time, the taxes became due and payable; (Gen. Stat., pp. 1044, 1045; laws of 1871, p. 328.) Then and not till then did the taxes become a lien on the real estate; (Gen. Stat. 1044, § 74.) And then, as between any grantor and grantee, if the land was conveyed prior to November 1st, the grantee paid the taxes; but if the land was not conveyed until after November 1st, the grantor paid them. (Gen. Stat. 1062, § 140.) These statutes show that, for the purpose of the payment of

taxes, the taxes were not imposed upon the land until November 1st. The taxes were not due until that time. They were not a lien upon the land until that time; and whoever owned the land at that time was required to pay the taxes, unless there was some express contract to the contrary, even though the owner had received the title only the day before. The defendant claims that the word "impose," as used in said agreement, means the same as the word "levy," and he claims that the taxes, or at least all but the state taxes, were levied on the first Monday of September. Now the word "levy" has various meanings, as well as the word "impose." It (the word *levy*) does not always, and indeed it very seldom means the fixing of the amount of the taxes to be raised, or the rate per cent. on the valuation of the taxable property. But it sometimes includes the collection of the taxes. Sec. 72 of the tax law of 1868 provides, that the county commissioners shall meet on the first Monday in September and do just what the defendant calls "levying" the taxes; and yet the next succeeding section of that law provides that "the county clerk, immediately after the first Monday in September, shall proceed to determine the sums *to be levied* upon each tract or lot of real property," etc., (Gen. Stat. 1044, § 73,) showing that in the opinion of the legislature the taxes were still *to be levied* after the county commissioners had done all that they were required to do towards the levying, or the collection, or the imposition of the taxes. All the statutes in force in 1873 seem to contemplate that the taxes did not stand against the land, and that they were not imposed upon the land until they became due against the land — until they became a lien upon the land — until the owner of the land became liable therefor, which was on the first day of November, and not earlier. Until the first day of November they could hardly be said to be taxes. They could not have been paid, and possibly no record would have shown, and no officer would have known, the amount thereof. And the record which would finally have shown the amount thereof was still in the hands of the county clerk, who never had any author-

ity to collect or receive the taxes. It would seem that all the tax proceedings had by any officer or officers, prior to the delivery of the tax-roll by the county clerk to the county treasurer on the first day of November, were only incipient and inchoate proceedings in the imposition of the taxes, and that the taxes were finally imposed on the land only by the county clerk delivering to the county treasurer the tax-roll on the first day of November. With these views, we think the defendant in error, Jaques, should pay the taxes imposed on said land for the year 1873. If Jaques had been an absolute grantee, instead of a conditional vendee, he would have been liable under the statutes, (Gen. Stat. 1062, § 140,) without any contract; and we think the contract in this case was intended to place the purchaser, so far as the payment of taxes was concerned, just in the same condition that he would have been if he had been an absolute grantee.

The judgment of the court below will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.