No. 25,981.

THE TRINITY EVANGELICAL LUTHERAN CHURCH OF KANSAS CITY, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE and THE STATE TAX COMMISSION, *Appellants.*

#### SYLLABUS BY THE COURT.

TAXATION — *Exemption* — *Real Property Conveyed to Exempt Owner—When Charge Attaches.* Real estate conveyed to a church organization and occupied by its pastor as a parsonage on March 10, 1921, long before the preliminary steps taken had progressed to a charge on the parsonage, was exempt from the taxes of that year.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, Judge. Opinion filed June 6, 1925. Affirmed.

*Charles B. Griffith,* attorney-general, *J. H. Brady,* county counselor, and *T. F. Railsback,* of Kansas City, for the appellants.

*James P. Fox,* of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Trinity Evangelical Lutheran Church purchased real property in Kansas City, on March 10, 1921, for use as a parsonage, and since that time it has been occupied as the residence of the pastor. As the parsonage was purchased after March 1 of that year, the county authorities proceeded upon the theory that it was subject to general taxation, and levied and were proceeding to collect a tax when the present action was begun to enjoin the enforcement of the tax. A trial resulted in a judgment holding the property to be exempt from taxation for the year 1921. In an appeal defendants contend that the property became taxable as of the first of March, and since it was not exempt to the one who owned it at that time, it is subject to taxation for that year. They conceded that if the plaintiff had acquired the property prior to March 1 it would have been exempt. The plaintiff concedes that if the property had been acquired by the plaintiff after November 1 of that year it would not have been exempt. Is real estate conveyed after March 1, and before November 1, to an exempt owner, subject to taxation against such owner for that year? is the question we are asked to decide.

The defendants insist that whether real estate is exempt from taxes or not depends on its ownership on March 1, the day on which the listing and valuation of property is begun. While the plaintiff

insists that the taxes do not become a charge on the property at the time of listing nor until the first of November of each year, that the listing of property is a mere step taken towards a levy, that at that time no tax has been determined nor levy made and that the tax cannot attach to the real estate until a levy is actually made.

Attention is called to R. S. 79-309, which in part reads:

"All property shall be listed and valued as on the first day of March in the year in which the same is assessed."

This provision is in a separate article, which prescribes rules relating to the taxation of personal property alone. In a separate article a specific provision is found providing for the manner of assessing real estate. In it no definite tax day is prescribed, nor is any time fixed when a tax shall attach to or be deemed to become a charge on real estate. Doubtless the legislature has power to fix a definite day when a liability for a tax shall arise. It might have fixed the day that the assessors began the listing and valuation of real estate or the time when their returns were made to the county clerk, or it might have fixed the time when the board of equalization completed their assessment and finally fixed the valuations on which levies were to be made and extended to each tract or lot of ground, or it might have prescribed the time when the tax becomes due and payable. No time being definitely fixed, we may look to the general scheme of taxation and search for the legislative intention as to the time the tax does attach. It should be noted that under the present system real estate is only assessed every fourth year. The statute provides:

"All real property in this state liable to assessment and taxation shall be assessed ·in the years 1916 and 1918, and in every fourth year after 1918." (R. S. 79-402.)

Under this provision the property in question was not open to assessment in 1921, nor until the following year; and can it be said that in the acquiring of property by an exempt owner he cannot claim the exemption until the end of the four-year period? There is a provision that if in the interim improvements are made upon real estate of over $300 in value, such value shall be added and returned for taxation. In respect to the times for the preliminary steps leading to the placing of a tax upon land, it is provided that the assessors shall complete their work of listing and valuation on May 1, and shall make their reports to the county assessor not later than the last business day in May. (R. S. 79-408.)

Another provision is that lands entered or acquired from the United States or the state before the first day of March shall be subject to taxation for that year.   (R. S. 79-413.)

When rolls of the assessors are received, the county clerk is authorized to correct errors as to descriptions or quantities, but can make no deduction from valuations returned.   (R. S. 79-416.)

There is a provision that when a city is organized after the regular assessment, and is platted into lots, blocks and streets, assessment may be made on the basis of the property as platted, but such an assessment cannot be made after August 1.   (R. S. 79-423.)

It is further provided that the state tax commission shall meet the second Monday in April and assess telegraph, telephone, pipe lines and electric power companies (R. S. 79-704), and the tax commission shall on or before the 30th day of May certify to the county clerk the amount apportioned to his county, and he in turn is to make an apportionment among the school districts, cities and townships through which the lines run.   (R. S. 79-710.)

Express companies are required to make statements of their assets and property between the 1st and 31st of May, and the tax commission is to meet on the first Monday of June and proceed to determine the amount of property on which a tax is to be levied and complete the same on or before the second Monday in July.   (R. S. 79-804.)

Car companies, other than railroad, are required to report their assets and liabilities to the tax commission on or before April 20 of each year, and levies are to be made on these on or before the first day of September.   (R. S. 79-901.)

Statements as to railroad property are to be made by the companies on or before the 20th day of March, and the time for the return made by the commission is required to be made on or before the 30th day of May in each year.   (R. S. 79-602, 79-608.)

There is a provision that if land is conveyed on or after the first day of March and before the first day of November, the grantee shall pay the tax, and if conveyed after November 1 and before March 1, the grantor shall pay them.   (R. S. 79-1805.)

In fixing the valuation of property upon which a tax is to be levied, it is provided that the county assessor is to carefully examine assessment rolls and personal-property statements returned, and correct errors discovered therein, and that he shall meet with the board of equalization on the third Monday of May in each year

when the valuation of property for taxation is to be fixed.   (R. S. 79-1412.)

There is a provision that after the board of equalization shall have completed its labors the county clerk shall prepare an abstract of the assessment rolls of the county and forward it to the tax commission on or before the first day of July (R. S. 79-1604), and that the county clerk may at any time before November 1 make corrections and allow exemptions to parties entitled to the same.   (R. S. 79-1701.)

The county commissioners are to meet on the first Monday of August in each year, determine the amount of money to be raised by tax, and make a levy on all the taxable property within the county.   (R. S. 79-1802.)   After levies have been made the county clerk is required to proceed to determine the sums to be levied upon each tract or lot of real property, and set down all taxes against each, and certify and deliver the tax roll to the county treasurer on or before the first day of November.   (R. S. 79-1803.)   There is specific provision that taxes shall become due on the first day of November of each year and that a lien for taxes shall attach to the real property subject to the same on that day.   (R. S. 79-1804.)

This summary covers only a part of the assessment and taxation system, but it is enough to show that there is no uniformity as to the times when assessments are made and no definite time when a tax attaches to real estate beyond which an exemption may not be claimed.   The statute declares that all property not expressly exempt shall be taxable, but it expressly provides that buildings and grounds used exclusively as places of public worship and any parsonage or dwelling owned by any church society and occupied by its pastor as a residence, together with the ground on which it is situated, not exceeding one-half acre, shall be exempt from taxation. (R. S. 79-201.)   The property in question, as we have seen, was acquired by the plaintiff and was occupied as a parsonage on and after March 10, 1921, before a tax for that year existed, and it does not appear that the assessor had even listed or valued the parsonage for taxation before that time.   When does a tax attach to and become a charge upon specific real property?   The matter of listing and valuation is only a preliminary step preparatory to a levy of a tax, the amount of which had not yet been determined. The steps taken prior to a levy are incipient and inchoate in character and do not amount to a tax.   They cannot ripen into a tax

until the amount is determined and the levy made.  In *A. T. & S. F. Rld. Co. v. Jaques*, 20 Kan. 639, the nature of these incipient proceedings was considered, and the court held that taxes cannot be regarded as imposed on land until they become a lien upon it. It was said:

"Until the first day of November they could hardly be said to be taxes. They could not have been paid, and possibly no record would have shown, and no officer would have known, the amount thereof.  And the record which would finally have shown the amount thereof was still in the hands of the county clerk, who never had any authority to collect or receive the taxes. It would seem that all the tax proceedings had by any officer or officers, prior to the delivery of the tax roll by the county clerk to the county treasurer on the first day of November, were only incipient and inchoate proceedings of the imposition of the taxes, and that the taxes were finally imposed on the land only by the county clerk delivering to the county treasurer the tax roll on the first day of November." (p. 642.)

There is some ground for a contention that real property becomes chargeable with a tax when the levy is made, but many authorities are to the effect that the tax does not attach until it is due and payable, and under our statute that is November 1.  Defendants cite *Wood v. McCook Waterworks Co.*, 97 Neb. 215, where it was held that property transferred after the tax day, which was April 1, to one entitled to an exemption, such owner could not be released from the tax; but the court was speaking of personal property, and a statute of the state provided that such property was to be assessed and taxed to the owner as of April 1.  It is not pertinent authority in a case where a tax is imposed on real estate and where the statute is silent as to the day when the tax attaches.  That case is reported and annotated in L. R. A. 1915C 125, and most of the cases in the note hold that an exemption is available on property acquired by an exempt owner after assessment and before it ripens into a charge or lien.  In *The State v. Academy of Science*, 13 Mo. App. 213, a statute giving an exemption took effect after an assessment had been made on property conveyed to an exempt owner, and before a lien had attached, and the court, among other things, said:

"We are of opinion that where the legislature exempts from taxation certain class of property which had been subject to taxation, and makes no provision as to the collection of taxes already assessed against such property, its intention must be that proceedings should not afterwards be inaugurated to subject the exempted property to the tax which has been removed, although the assessment was made before a repeal of the tax."

In New York, property was acquired by a church on June 15, after tax proceedings had been started, but was not confirmed until August 29. It was held that as the tax was not a lien upon the property at the time the title to it was acquired by the church, the tax was unlawful. (*St. James Church v. Mayor, etc., of N. Y.,* 48 N. Y. Sup. Ct. Rep. 309.)

In *Gachet v. City of New Orleans,* 52 La. Ann. 813, the city purchased property upon which an assessment had been made and which had not become due. The tax could not be enforced, and the city, by assuming in its deed the payment of taxes for that year, was not estopped to claim the exemption. See, also, authorities cited in Note, 48 L. R. A., n. s., 707.

Since neither the status of real estate for taxation nor a definite tax day was fixed by the legislature, we conclude that an assessment, if made on the parsonage, had not ripened into a charge upon the property, and therefore that it was exempt from the taxes of that year.

The judgment is affirmed.

HARVEY, J., concurs in the result.