**BOARD OF COUNTY COM'RS OF SEDGWICK COUNTY, KAN. v. UNITED STATES.**

**No. 50117.**

United States Court of Claims.

July 15, 1952.

Claude I. Depew, Wichita, Kan., Depew, Stanley, Weigand, Hook & Curfman and L. A. Hasty, Wichita, Kan., on the brief, for plaintiff.

Thomas L. McKevitt, Washington, D. C., Wm. Amory Underhill, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This action has been brought by the Board of County Commissioners of Sedgwick County, State of Kansas, for taxes allegedly lawfully assessed, due, and owing upon certain real property located in Sedgwick County, Kansas, for the years 1944, 1945, 1946, and 1947. Jurisdiction is conferred upon this court by a special act of

Congress, Public Law No. 5, 82d Congress, 1st Sess., approved March 19, 1951, 65 Stat. 5, reading as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That:*

Jurisdiction is hereby conferred on the Court of Claims to hear, determine, and render judgment upon, notwithstanding any law to the contrary, the claim of the Board of County Commissioners of Sedgwick County, Kansas, against the Government of the United States on account of delinquent real-estate taxes for the tax years 1944, 1945, 1946, and 1947 assessed and levied against three tracts of land in sections 11 and 14 of township 28 south, range 1 east, of the sixth principal meridian, in Sedgwick County, Kansas, constituting the aircraft factory and grounds owned in such years by the Defense Plant Corporation and the Reconstruction Finance Corporation and leased to the Boeing Airplane Company and transferred on or about February 25, 1948, by the Reconstruction Finance Corporation to the United States subject to unpaid taxes for said four years. Such court shall determine the amount of said taxes, and render judgment in favor of said Board of County Commissioners of Sedgwick County, Kansas, and against the United States for the amount of any such taxes which such court may find and adjudge to have been lawfully assessed against such real estate and remaining due and unpaid: *Provided,* That nothing herein shall be construed as authorizing suit or judgment for interest, penalties or charges on, or in connection with said taxes. The court shall have such jurisdiction if suit is instituted within sixty days after the date of enactment of this Act."

The property involved in this action was acquired in 1942 by the Defense Plant Corporation, a wholly-owned subsidiary of the Reconstruction Finance Corporation. Shortly after its acquisition a plant for the manufacture of B–29 bomber type airplanes was constructed on the premises, and the property was leased to the Boeing Airplane Company.

Effective July 1, 1945, the Defense Plant Corporation was liquidated, and the property in question, together with the other assets, rights, and liabilities of the Defense Plant Corporation were transferred to the Reconstruction Finance Corporation, pursuant to Joint Resolution of Congress, 59 Stat. 310, 15 U.S.C.A. § 611 note. On August 21, 1946, the RFC declared the property surplus, under the Surplus Property Act of 1944, 58 Stat. 765, 50 U.S.C.A.Appendix, § 1611 et seq. Acting under the same act the War Assets Administration accepted responsibility and authority for the property on April 16, 1947. From that date forward the RFC had neither physical possession, control, or custody of the property, nor the right to use the premises.

No disposition of the property was made by the WAA until February 25, 1948, when the War Assets Administrator, acting on behalf of the RFC, executed a deed to the property to the United States. Custody and accountability of the property was thereupon transferred to the Department of the Air Force. The deed executed by the War Assets Administrator contained the recital that it was "subject to unpaid taxes for the years 1944, 1945, 1946, and 1947".

In 1947 the Government's lessee, Boeing Airplane Company, sought to obtain an adjudication that the property was exempt from taxation under Kansas law, but the case was disposed of on procedural grounds. Boeing Airplane Co. v. Board of County Com'rs of Sedgwick County, 164 Kan. 149, 188 P.2d 429, 11 A.L.R.2d 350. According to plaintiff, under Kansas law delinquent real estate taxes can be collected only by a foreclosure action against the land. Since the title thereto had been transferred to the United States, it was therefore necessary to obtain a special jurisdictional act, Public Law No. 5, supra, in order that suit might be brought for the collection of those taxes.

The levy and collection of taxes on real property within Sedgwick County is within the general jurisdiction of plaintiff, and this action is brought for the benefit of Sedgwick County and all other taxing units en-

titled to a distributive portion of the taxes involved herein.

The dispute in this case concerns the taxable status of the property for the years 1944, 1945, 1946, and 1947, with the defendant contending that the property was exempt from taxation by the laws of Kansas, and further that for the years 1946 and 1947 the property was immune from taxation by Kansas under the laws and Constitution of the United States. None of the taxes here claimed by the plaintiff has been paid, although defendant did pay sums in lieu of taxes in connection with an adjacent government housing project for the years in question, as well as certain sums for highway construction in Sedgwick County, as indicated more fully in the findings. No sums in lieu of taxes were paid on the property involved in this action.

From McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, has arisen the principle that the federal government is constitutionally immune from taxation or regulation by the several states. Any doubts persisting as to this principle with respect to government-owned lands were effectively laid to rest in Van Brocklin v. State of Tennessee, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845, which expressly declared the constitutional immunity applied to taxation by the State of Tennessee of lands owned by the United States.

Such immunity from state taxation may also attach to corporate instrumentalities of the United States. Clallam County v. United States, 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328. With respect to real property owned by the RFC, an instrumentality of the federal government, and its wholly owned subsidiary, the Defense Plant Corporation, however, Congress has waived that immunity in the following terms:

" * * * any real property of the corporation shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is

taxed. * * *" Act Jan. 22, 1932, § 10, 47 Stat. 10, as amended by Act June 10, 1941, § 3, 55 Stat. 248.

There was therefore no prohibition arising out of the laws or Constitution of the United States effective to prevent taxation of the lands here for the years in question, with the exception of the year 1947, which will be considered separately. Except as limited by the Constitution of the State of Kansas, plenary power to tax these lands was vested in the Kansas legislature. State v. Holcomb, 81 Kan. 879, 106 P. 1030, 28 L.R.A.,N.S., 251. See State ex rel. R. C. F. Corp. v. Sanlader, 250 Wis. 481, 27 N.W. 447.[1] Defendant has not asserted here that the Kansas Constitution has imposed any limitations upon the power of the legislature to tax the property in question.

Of course the mere existence of a constitutional power to tax is ineffective to impose liability for taxes unless the legislature has actually made proper statutory provision therefor. Preston v. Sturgis Milling Co., 6 Cir., 183 F. 1, 32 L.R.A.,N.S., 1020, certiorari denied, 220 U.S. 610, 31 S.Ct. 714, 55 L.Ed. 608; Board of Com'rs of Oklahoma County v. Ryan, 107 Okl. 278, 232 P. 834. Consequently the question to be resolved is whether the legislature of Kansas by statutory enactment did actually exercise its power to tax the lands under suit.

Section 79–101, General Statutes of Kansas 1935, provided "that all property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act."

Section 79–201, Id., provided "that the property described in this section, to the extent herein limited, shall be exempt from taxation: * * * Fifth. All property belonging exclusively to this state or to the United States."

It is defendant's contention that notwithstanding the waiver by Congress of the constitutional immunity of RFC-owned lands from taxation, the lands are still exempt

---

1. The Wisconsin Constitution contained provisions similar in part to the Joint Resolution of the Legislature of the State of Kansas providing for admission to the Union, G.L.1862, Ch. 6, approved January 20, 1862. The Wisconsin court held that the Wisconsin legislature was not prohibited from taxing real property of the Defense Plant Corporation.

from taxation under Section 79–201 of the Kansas statutes, independently of the waived constitutional immunity. Defendant argues that if Kansas had intended to tax these lands it would have amended section 79–201 to so provide. Defendant then points to Public Law No. 5, supra, which directs that this court shall render judgment for such taxes as it finds to have been *lawfully assessed* and remaining due and unpaid. Defendant concludes that as long as section 79–201 remained without amendment during the years in question, there could be no lawful tax levied upon these lands by the plaintiff, so that plaintiff's claim here is not for taxes lawfully assessed within the meaning of Public Law No. 5.

It thus becomes the duty of this court to determine the intended scope and effect of the exemption provided in section 79–201, and to carry out the intention of the Kansas legislature in enacting that exemption. Trotter v. Tennessee, 290 U.S. 354, 54 S.Ct. 138, 78 L.Ed. 358. With respect to a similar exemption in State v. Holcomb, supra, at 106 P. 1030, 1033, the Supreme Court of Kansas stated:

"* * * The statute provides that 'all property in this state, real and personal, not expressly exempted therefrom shall be subject to taxation in the manner provided in this act.' Gen.St. 1901, § 7502; Laws 1907, c. 408, § 1. * * * The general theory of the law is that all property shall contribute equally to the support of the government. It is competent for the Legislature to exempt property from taxation, but to the extent that one is relieved from his burden it is necessarily imposed on others, and hence, before a person can have such a discrimination in his favor, *he must clearly show it to have been within the legislative purpose.*" Emphasis supplied.

Thus it is well established in the Kansas courts that such exemptions must be strictly construed, Clements v. Ljungdahl, 161 Kan. 274, 167 P.2d 603; Palmer v. State Commission of Revenue and Taxation, 156 Kan. 690, 135 P.2d 899; and it has been said that the claimant of the tax exemption "must establish beyond a reasonable doubt

his right thereto." National Council of K. & L. of Security v. Phillips, 63 Kan. 799, 66 P. 1011, 1012. Once the Congress has waived its constitutional immunity it would seem that this rule of strict construction must apply to the United States to the same extent as to other taxpayers.

The exemption provided under section 79–201 apparently had its origin in the ordinances prefixed to the Kansas Constitutions of 1858 and 1859, Constitutions and Charters, pp. 613, 629, which recited a right by Kansas to tax federal lands within its limits, and a conditional relinquishment of that right. Congress refused to assent to those recitals and in the act of January 29, 1861, 12 Stat. 127, required Kansas, as a term of its admission to the Union, to accept the proposition that it would impose no taxes on lands belonging to the United States. Van Brocklin v. State of Tennessee, supra, 117 U.S. at page 166, 6 S.Ct. at page 678. The Kansas Legislature accepted this proposition in the following terms:

"That the propositions contained in the Act of Congress, 'Entitled an Act for the Admission of Kansas into the Union,' are hereby accepted, ratified, and confirmed, and shall remain irrevocable, without the consent of the United States. And it is hereby ordained, that this State shall never interfere with the primary disposal of the soil within the same by the United States, or with any regulations Congress may find necessary for securing the title to said soil, to bona fide purchasers thereof: and no tax shall be imposed on lands belonging to the United States." Joint Resolution of the Legislature of the State of Kansas, G.L.1862, ch. 6.

It is clear that even without this agreement Kansas could not have taxed federal lands without the consent of the United States. Nevertheless, Congress required Kansas to make an express and superfluous proclamation of this immunity before it could achieve statehood.

Just a few years later in acknowledging that the immunity from taxation existed even without the express agreement, the

court in Blue Jacket v. Johnson County Commissioners, 3 Kan. 299, 348, declared

"If the title to the lands be in the United States, they are not taxable. Not only are the lands of the general government exempt from taxation by express stipulation on the part of the State, but without such agreement they would not be liable to be taxed. The irrevocable ordinance of the legislature is merely the expression of what the law would have been without it."

And the Supreme Court held, in Van Brocklin v. Tennessee, supra, that

"It cannot be doubted that the provisions which speak of the exemption of property of the United States from taxation, in the various acts of congress admitting states into the Union, are equivalent to each other; and that, like the other provision which often accompanies them, that the state 'shall not interfere with the primary disposal of the soil by the United States,' they are but declaratory, and confer no new right or power upon the United States." 117 U.S. at page 167, 6 S. Ct. at page 679.

Section 79–201 of the General Statutes of Kansas falls into the same category. As far as applicable to the lands in question, it does not appear that it was ever intended to be anything more than a legislative utterance of an existing constitutional immunity attaching to lands owned by the United States. It was not itself the foundation of the exemption but was "inserted only from abundant caution, and because the assessment of taxes is to be made by local officers skilled in the valuation of property, but presumably unlearned in legal distinctions." Van Brocklin, supra, 117 U.S. at page 171, 6 S.Ct at page 681, citing Town of West Hartford v. Board of Water Commissioners, 44 Conn. 360, 368.

Since section 79–201 was merely declaratory of a constitutional immunity, and was not itself the source of the exemption, its operative effect was necessarily coterminous with that immunity. The constitutional immunity was terminated with respect to RFC-owned lands by 47 Stat. 10. Section 79–201 thus was not independently operative to afford an exemption to the lands in question, and defendant's contention must be rejected.

Those lands were consequently taxable under the general taxing statutes "to the same extent according to [their] value as other real property is taxed". The taxes for the years 1944, 1945, and 1946, were therefore "lawfully assessed" within the meaning of Public Law No. 5.

This holding gives full effect to the purpose and intended operation not only of the Kansas statutes but also of the acts of Congress herein set forth in which Congress waived the immunity from taxation and from suit against the United States for those taxes. No reason, constitutional or otherwise, has been presented to justify non-payment of taxes by the RFC in Kansas while making payment of taxes in similar situations in other states. See for example, Boeing Aircraft Company v. R. F. C., 25 Wash.2d 652, 171 P.2d 838, 168 A.L.R. 539, certiorari denied Boeing Aircraft Co. v. King County, 330 U.S. 803, 67 S.Ct. 972, 91 L.Ed. 1262, 168 A.L.R. 539; and State v. Sanlader, supra. (The brief filed by the RFC in the Boeing case in support of the tax referred to the "fixed policy of the Congress of the United States to subject the real property owned by the United States and held in the name of government corporations and agencies to state and local taxation"). It must have been to remedy this unequal situation that Congress enacted Public Law No. 5 conferring jurisdiction on the Court of Claims to hear plaintiff's claim.

The Boeing case, supra, is of significance because of its close similarity to the instant case. Amendment 14 to the Constitution of the State of Washington provided that "property of the United States * * * shall be exempt from taxation." After considering this and other constitutional and statutory provisions the Supreme Court of Washington held:

" * * * that our constitutional provisions relative to taxes upon Federal property are not compelling, in

that they do not bind this state to exempt from taxation property owned by the United States, .and that in all cases Federal property shall be taxed by this state when consent is given by the Congress of the .United States. 171 P.2d 838, 845.

Also bearing some similarity to the case at bar is Borough of Homestead v. Defense Plant Corporation, 356 Pa. 500, 52 A.2d 581, 586. Taxability under Pennsylvania statutes of the property of the Defense Plant Corporation was conceded, but there was a question as to the validity of a lien imposed on such property. The Pennsylvania court considered whether the Plant's property was "'property owned by the * * * United States'" within the meaning of an exception provided in the Pennsylvania Municipal Lien Act of 1923, 53 P.S. § 2025, and then stated:

> "* * * But, beyond that, we now hold as a matter of statutory construction that the phrase 'property owned by the * * * United States', as employed in the cited section of the Pennsylvania Municipal Lien Act, was meant to embrace *only* such property of the United States as has not been laid open by the sovereign to local taxation; and we accordingly conclude that the Plant's property (being expressly subjected by the sovereign to local taxation) was not within the intent of the exception in the Lien Act." 52 A.2d 581, 586.

Defendant concedes in the instant case that the provision that.

> "* * * any real property of the corporation shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed. * * *" Act Jan. 22, 1932, § 10, 47 Stat. 10.

was a waiver of the constitutional immunity, but insists that it was nothing more. As in the cases just discussed, we have found no indication to support defendant's contention that the Kansas legislature intended to confer a new right or power upon the United States independent

of its constitutional immunity, so that even if defendant's argument were correct with respect to the extent of the waiver it would avail the Government nothing.

But even apart from that, we cannot accept defendant's limited construction as to the extent of 47 Stat. 10, the waiver provision. Even if the Kansas legislature had intended to confer a new right or power upon the United States independent of its constitutional immunity—which thesis is expressly denied by Van Brocklin—we believe that 47 Stat. 10 was a waiver by Congress of that right also, just as it was a waiver of the constitutional immunity.

> "A taxpayer may be estopped to claim, or may waive his right to, an exemption by an express renunciation thereof; * * * or by changes for which he is responsible taking him out of the exempted class * * *." 61 C.J., Taxation, § 423.

■ Nor was it necesssary under the circumstances for the state to make an acceptance of the waiver. See Central Pacific Railroad v. Nevada, 162 U.S. 512, 16 S.Ct. 885, 40 L.Ed. 1057; Logan v. Board of Com'rs of Clark County, 51 Kan. 747, 33 P. 603. The waiver provision purported to waive not merely the right of constitutional immunity, but all rights arising from the status of the lands as Government-owned property, which might be asserted to avoid imposition of tax liability otherwise attaching to the property. Under defendant's theory the lands would not be taxed "to the same extent * * * as other real property", as directed by the waiver provision, but would completely escape taxation by the state while adjacent privately owned acres would bear the full burden. Viewed in this light defendant's position is untenable.

Thus even if in the intendment of the Kansas legislature section 79–201 were not coterminous with the constitutional immunity the result here would not vary, since the waiver provided in 47 Stat. 10 would apply to the statutory exemption as well as to the constitutional immunity. Under either view the taxes in question would have been "lawfully assessed" within the

meaning of Public Law No. 5, and plaintiff would be entitled to recover here for the taxes claimed for the years 1944, 1945 and 1946. It may be noted that on August 21, 1946, the property for which taxes are claimed was declared surplus to the War Assets Administration by the RFC. Defendant has contended that this declaration in effect restored the constitutional immunity from taxation to the lands in question, and prevented the lawful assessment of any taxes after that date (including the 1946 taxes, which for reasons hereafter explained accrued on November 1, 1946). No change in the tax status of the property was effected by the declaration alone, however, since responsibility and authority over the property was not transferred to the WAA until the acceptance by the latter on April 16, 1947. Thus defendant is liable for the 1946 taxes on the same basis as for the years 1944 and 1945.

We believe, however, that the taxes for the year 1947 fall into a different category, as a result of the declaration of the property as surplus, and the acceptance thereof by the WAA on April 16, 1947, acting presumably under the authority conferred in section 11(d) of the Surplus Property Act.[2]

The law did not require that the RFC execute a deed of the property upon its transfer to the control of the WAA, and the RFC continued after April 16, 1947, as the "owning agency" within the meaning of the Surplus Property Act—apparently as a matter of convenience to the Government and to minimize actual paper work and expense until the WAA made final disposition of the property. While a bare legal title for the use of the United States may have thus remained in the RFC from April 16, 1947, until February 25, 1948, when the property was transferred to the Department of the Air Force, nevertheless the entire responsibility for the care and handling,[3] and disposition of the property was in the WAA during that period. United States v. Shofner Iron & Steel Works, 9 Cir., 168 F.2d 286, 287.

The waiver of constitutional immunity from taxes of "real property of the corporation" enacted with respect to the RFC in 1932, 47 Stat. 10, was undoubtedly intended to apply to that real property of the corporation held by it in the performance of the duties and responsibilities imposed upon it by law. But by the August 21, 1946, declaration of the property as surplus under the Surplus Property Act, 58 Stat. 765, enacted some 12 years after 47 Stat. 10, the RFC declared that the property was surplus to its "needs and responsibilities", and by the acceptance of April 16, 1947, was divested of all control and responsibility. At no time after the acceptance by the WAA on April 16, 1947, did the RFC or any of its employees have physical possession, control, or custody of the property. It had neither the use nor the right to use the property. It could not even withdraw the declaration of surplus property without the approval of the War Assets Administrator. 32 CFR, 1946 Supp. 8301.15(b).

There is no indication that Congress intended to waive immunity from taxation under these circumstances, if indeed the Kansas legislature intended to tax the RFC's interest in such a situation. Cf. Lancy v. City of Boston, 186 Mass. 128, 71 N.E. 302. Such a situation could not even have arisen at the time the waiver provision was enacted, and was made possible only by the enactment of the Surplus Property Act some 12 years later. The

2. "* * * Where the disposal agency is not prepared at the time of its designation [as surplus property] under this Act to undertake the care and handling of such surplus property the [War Assets Administrator] may postpone the responsibility of the agency to assume its duty for care and handling for such period as [he] deems necessary to permit the preparation of the agency therefor." 58 Stat. 770, § 11(d).

3. "The term 'care and handling' includes completing, repairing, converting, rehabilitating, operating, maintaining, preserving, protecting, insuring, storing, packing, handling, and transporting, and, in the case of property which is dangerous to public health or safety, destroying, or rendering innocuous, such property." 58 Stat. 767, § 3(g).

purpose of the waiver provision had been fully served when the property passed to the control of the WAA.

Upon consideration of these factors we cannot presume that Congress intended the waiver provision with respect to "real property of the corporation" to extend to the lands in question after they passed to the responsibility and authority of the WAA on April 16, 1947. Thus we hold that the cloak of immunity descended upon the property on that day and no ·tax liability for the property could arise thereafter.[4]

Plaintiff contends, however, that liability, for the 1947 taxes must be dated· from March 1, 1947, by virtue of section 79–402, General Statutes of Kansas 1935, which provided that assessments of real property in Kansas for tax purposes shall be made "as of" March 1 of the tax year. Under plaintiff's contention defendant would, of course, be liable for the 1947 taxes.

Under Kansas statutory provisions substantially similar to those applicable here, however, the Kansas Supreme Court has held that the crucial date is not March 1, but November 1. In Trinity Evangelical Lutheran Church v. Board of Com'rs of Wyandotte County, 118 Kan. 742, 236 P. 809, 810, the court pointed out that

"* * * There is specific provision that taxes shall become due on the 1st day of November of each year and that a lien ·for taxes shall attach to the real property subject to the same on that day. R.S. 79–1804.

"* * * The matter of listing and valuation is only a preliminary step

preparatory to a levy of a tax, the amount of which had not yet been determined. The steps taken prior to a levy are incipient and inchoate in character and do not amount to a tax. They cannot ripen into a tax until the amount is determined and the levy made. * * *"

The court relied upon Atchison T. & S. F. R. Co. v. Jaques, 20 Kan. 639, which stated that "until the 1st day of November they could hardly be said to be taxes". Accord City of Wichita v. Anderson, 119 Kan. 241, 237 P. 1024. Cf. Gachet v. City of New Orleans, 52 La.Ann. 813, 27 S. 348; City of Harlan v. Blair, 251 Ky. 51, 64 S.W.2d 434; Madison County v. School Dist. No. 2, 148 Neb. 218, 27 N.W.2d 172.

In reliance upon the Kansas decisions we must hold that the 1947 tax liability did not accrue on March 1, 1947, as plaintiff contends. There was no 1947 tax due prior to April 16, 1947,[5] and none could become due thereafter because the constitutional immunity had revived when the lands were transferred to the authority and control of the WAA. While there may have been a valid assessment or valuation of the property "as of" March 1, 1947, within the meaning of section 79–402, such step was only "incipient and inchoate" and could not "ripen into a tax until the amount is determined and the levy made." There was no actual accrual of tax liability for 1947 for this property within the meaning of either the Kansas statutes and decisions, or Public Law No. 5. On November 1, 1947, the Kansas tax day, the property in question was immune from taxation by the state of Kansas, Van Brocklin v. State of

4. Regulations promulgated by the War Assets Administrator, 32 CFR, 1946 Supp. 8310.4, and 32 CFR, 1947 Supp. 8305.9, made certain provisions for the payment by the disposal agency of taxes due for periods after assumption of responsibility for surplus property. These regulations, administrative in nature, do not purport in any respect to waive constitutional immunity from taxation. They ·can refer, of course, only to the situation where, for reasons not present in the instant case, there is no constitutional immunity and there are taxes otherwise lawfully owing.

5. Section 1, House Bill No. 262, Chapter 467, Kansas Laws of 1949, amended section 79–1804 to provide that where property was acquired by the United States (or by certain other Kansas tax-exempt organizations) between March 1 and November 1, the taxes for that year should become due and the lien therefor attach to the realty prior to such acquisition. In all other cases the crucial date remained the first day of November. This amendment, of course, had no effect on taxes for the prior years, which are here involved.

Tennessee, supra, and this court cannot render judgment for the taxes claimed for the year 1947. In this respect Public Law No. 5 is no more than a special jurisdictional act and does not purport to enlarge defendant's liability.

This aspect of the case is not concerned with the effect of an acquisition of land by a body entitled to a tax immunity upon prior tax liens or upon the validity of a sale. pursuant to such taxes, Halvorsen v. Pacific County, 22 Wash.2d 532, 156 P.2d 907, 158 A.L.R. 563, nor with the perfection of a tax lien operating by relation back to an earlier tax date to attach prior to acquisition of land by a governmental body. United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327. Here as far as the 1947 taxes were concerned, neither could tax liability arise, nor could a lien attach until after April 16, 1947, when the property was transferred to the WAA, and then, of course, not at all.

In accordance with the foregoing opinion judgment will be entered for the plaintiff for the unpaid taxes lawfully assessed for the years 1944, 1945, and 1946, in the total amount of $249,355.62.

It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.

Joseph Fairbanks, Washington, D. C., Fairbanks, Stafford & Fairbanks, Washington, D. C., on the brief, for plaintiff.

Thomas O. Fleming, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., Lawrence Smith, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

