Dear Mr. Jones:
This opinion is rendered in response to your question asking:
 Does Article III, § 43 [sic] of the Missouri Constitution of 1945 preclude ad valorem taxation of real property located in Missouri and repossessed by Farmers Home Administration?
Article III, Section 43, Missouri Constitution (1945), states in relevant part "[n]o tax shall be imposed on lands the property of the United States; . . . ."
42 U.S.C. § 1490h (Supp. IV 1980) states in part:
 All property subject to a lien held by the United States or the title to which is acquired or held by the Secretary under this subchapter other than property used for administrative purposes shall be subject to taxation by a State, Commonwealth, territory, possession, district, and local political subdivisions in the same manner and to the same extent as other property is taxed: . . . . [Emphasis added.]
 7 C.F.R. Section 1955.63(f)(1)(1983) states in part:
 Property acquired by FmHA is subject to taxation by State, Commonwealth, territory, district, and local political subdivisions in the same manner and to the same extent as other property, unless State law specifically exempts taxation of real estate owned by the Federal Government. . . . [Emphasis added.][1]
The issue is whether that portion of Article III, Section 43, Missouri Constitution (1945), quoted above specifically exempts the ad valorem taxation of real property located in Missouri and repossessed by the Farmers Home Administration. For the reasons stated below, this office concludes that Article III, Section 43, Missouri Constitution (1945), does not create such an exemption.
The language of Article III, Section 43, Missouri Constitution (1945), stating "[n]o tax shall be imposed on lands the property of the United States; . . ." has a long and venerable history. In Section 4 of the Act of March 6, 1820, ch. 22,3 Stat. 545 (the enabling act authorizing the People of the Missouri Territory to form a constitution and state government), the Congress stated the condition "that no tax shall be imposed on lands the property of the United States; . . . ." Accordingly, ArticleX, Section 1, Missouri Constitution (1820), stated in part "[n]o tax shall be imposed on lands the property of the United States, . . . ." Article XI, Section 1, Missouri Constitution (1865), stated in part "[n]o tax shall be imposed on lands the property of the United States; . . . ." Article XIV, Section 1, Missouri Constitution (1875), stated in part "[n]o tax shall be imposed on lands the property of the United States; . . . ."
In McCulloch v. Maryland, 17 U.S. 316, 425-437 (1819), Chief Justice Marshall interpreted the supremacy clause of the federal constitution, U.S. Const. art. VI, cl. 2, as granting the operations of instruments employed by the United States an immunity from state taxation. The scope of the McCulloch immunity was unclear. The Court stated: "This opinion does not deprive the States of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the State, . . . ."17 U.S. at 436.
In Van Brocklin v. Tennessee, 117 U.S. 151 (1886), the Court held that land the United States acquired through the enforcement of tax liens shared in the intergovernmental tax immunity.
In the course of the Van Brocklin opinion, the Court stated at 117 U.S. at 163-164:
 Upon the admission of every other State into the Union, the exemption of the lands of the United States from taxation by the State has been declared — sometimes in the form of a condition imposed by Congress, and sometimes in the form of proviso to a provision to grant the State certain lands or money, offered for its acceptance or rejection — in phrases somewhat varying, but substantially similar to one another.
 In the acts for the admission of Mississippi in 1817, Alabama in 1819, Missouri in 1820, Arkansas in 1836, Michigan in 1837, Iowa in 1845 and 1846, Wisconsin in 1847, Minnesota in 1857, and Oregon in 1859, the words are "no tax shall be imposed on lands the property of the United States," or words of exactly the same meaning. . . . [citations omitted]. In the acts of 1864 for the admission of Nevada, of 1864 and 1867 for the admission of Nebraska, and of 1875 for the admission of Colorado, the expression is somewhat fuller, "no tax shall be imposed by the State on lands or property therein, belonging to, or which may hereafter be purchased by, the United States." . . . [citations omitted]. [Emphasis added.]
At 117 U.S. at 167, the Court stated:
 It cannot be doubted that the provisions which speak of the exemption of property of the United States from taxation, in the various acts of Congress admitting States into the Union, are equivalent to each other; and that, like the other provision, which often accompanies them, that the State "shall not interfere with the primary disposal of the soil by the United States," they are but declaratory, and confer no new right or power upon the United States. [Emphasis added.]
Again, at 117 U.S. at 171, the Court stated:
 The legislatures of most of the States have affirmed the same principle, by inserting in their general tax acts an exemption of property belonging to the United States. Such a provision, as has been well observed by the Supreme Court of Connecticut in West Hartford v. Water Commissioners, above cited, is not the foundation of the exemption, but is inserted only from abundant caution, and because the assessment of taxes is to be made by local officers skilled in the valuation of property, but presumably unlearned in legal distinctions. 44 Conn. 368. [Emphasis added in part.]
In Boeing Aircraft Co. v. Reconstruction Finance Corporation,25 Wn.2d 652, 171 P.2d 833 (1946), appeal dismissed and cert. denied, 330 U.S. 803 (1947), Boeing Aircraft Company entered into a sale and leaseback agreement on certain land with the Reconstruction Finance Corporation, a corporation owned by the United States. A federal statute made land owned by this corporation taxable by states, counties, municipalities, and other local taxing authorities to the same extent as other real property. The enabling act authorizing the organization of the State of Washington and the Washington Constitution contained words similar to those quoted above in regard to Missouri law.
The Boeing court reviewed the Van Brocklin case and concluded as follows at 171 P.2d at 845:
 We hold that our constitutional provisions relative to taxes upon Federal property are not compelling, in that they do not bind this state to exempt from taxation property owned by the United States, and that in all cases Federal property shall be taxed by this state when consent is given by the Congress of the United States. [Emphasis added.]
In State ex rel. Reconstruction Finance Corporation v. Sanlader, 250 Wis. 481, 27 N.W.2d 447 (1947), the Kearney-Trecker Corporation entered into a sale and leaseback agreement on certain land with the Defense Plant Corporation, which was later merged into the Reconstruction Finance Corporation. Again, there was a federal statute consenting to state and local taxation of land held by the Reconstruction Finance Corporation. Again, there were provisions in the enabling act authorizing the organization of the State of Wisconsin and in the Wisconsin Constitution stating that no tax shall be imposed on land which is the property of the United States or words of similar effect.
The court in Sanlader, 27 N.W.2d at 450-451, stated:
 McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 is generally considered to hold that lands and property of the United States are exempt from taxation by the state in which they are located although a reading of the opinion would seem to raise some question whether it is not limited to a holding that means and instrumentalities employed by the federal government for the execution of its powers are not taxable. In any event, it is said in the opinion that the lands of the Bank of the United States located in Maryland were taxable although the operations of the bank were not. However, the matter was put in issue by the briefs of counsel and the general opinion of the bar and legal writers was that the opinion had the broader scope above indicated. In Van Brocklin v. State of Tennessee, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845 it was held explicitly that the states had no power to tax federally owned lands. In the opinion in this case it was also stated that enabling acts under which such states as Wisconsin were admitted to the union are equivalent to each other, are wholly declaratory in character and confer no new right or power upon the United States. It is suggested in 1 Willoughby 154 that the enabling acts were the result of misgivings concerning the scope of the holding in McCulloch v. Maryland, supra. We deem this of little consequence. In any case the legal effect of an enabling act and its acceptance by any state admitted under it is simply to declare the law as it existed from the time the federal constitution was adopted. Without it, a state could not tax lands of the United States located within its boundaries except with [sic] the consent of the United States.
 Another principle well established is that set forth in Coyle v. Smith, 221 U.S. 559, 31 S.Ct. 688, 55 L.Ed. 853. It was there held that when a new state is admitted to the union it is so admitted with all the powers of sovereignty and jurisdiction which pertain to the original states and that such powers may not be constitutionally diminished, impaired or shorn away by any conditions, compacts or stipulations embraced in the act under which the new state came into the union which would not be valid and effectual if the subject of congressional legislation after admission. Hence, congress could not exact as a condition to statehood that Wisconsin engage not to tax federal lands by a constitutional provision if it meant thereby to require that Wisconsin could not act upon the consent of Congress to tax federal lands unless it adopted a constitutional amendment by the procedure requisite to such amendments. To exact this would impede and delay Wisconsin in responding to a consent to tax in a manner that the original 13 states and such states as were not admitted by such enabling acts are not impeded and would be of no force and effect under the doctrine of Coyle v. Smith, supra. Hence, it must be assumed unless the language of the enabling act clearly repels the assumption, that Congress did not mean so to limit and prescribe the sovereignty of the state of Wisconsin. The inference is a genuine one since the applicable provisions of the enabling act were inserted out of an abundance of caution and it cannot be supposed that the design was to do more than to make it clear that lands of the United States were not without its consent to be taxed by the state.
The court concluded at 27 N.W.2d at 451-452:
 The foregoing leads us to the conclusions (1) that the enabling acts are merely declaratory of a rule that a state may not without federal consent tax lands owned by the United States; (2) that these acts were founded in caution and meant to do no more than secure by compact what the law required in any event; (3) that the state of Wisconsin had no motive for going any further with its constitutional provisions than was necessary to meet the conditions imposed by Congress; (4) that the rule contended for by respondent would make it impossible for the state of Wisconsin even by constitutional amendment to tax lands of the United States or its instrumentalities.
In Board of County Com'rs of Sedgwick County, Kan. v. United States, 105 F. Supp. 995
(Ct.Cl. 1952), the Defense Plant Corporation, which was later merged into the Reconstruction Finance Corporation, a corporation owned by the United States, acquired a plant for the manufacture of B-29 bomber airplanes and leased this property to Boeing Aircraft Company. After World War II, this property was declared surplus and such was transferred to the War Assets Administration. Again, there was a federal statute consenting to state taxation of land held by the Reconstruction Finance Corporation. The State of Kansas had a statute exempting all property belonging exclusively to the United States from property taxation. Again relying on the Van Brocklin case, the court concluded that the Kansas statute "was merely declaratory of a constitutional immunity, and was not itself the source of the exemption, its operative effect was necessarily coterminus with that immunity." 105 F. Supp. at 999. The court concluded that Kansas could tax this property during the years it was held by the Reconstruction Finance Corporation.
Article X, Section 6.1, Missouri Constitution (1982), states:
 All property, real and personal, of the state, counties and other political subdivisions, and nonprofit cemeteries, shall be exempt from taxation; all personal property held as industrial inventories, including raw materials, work in progress and finished work on hand, by manufacturers and refiners, and all personal property held as goods, wares, merchandise, stock in trade or inventory for resale by distributors, wholesalers, or retail merchants or establishments shall be exempt from taxation; and all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely charitable, or for agricultural and horticultural societies may be exempted from taxation by general law. In addition to the above, household goods, furniture, wearing apparel and articles of personal use and adornment owned and used by a person in his home or dwelling place may be exempt from taxation by general law but any such law may provide for approximate restitution to the respective political subdivisions of revenues lost by reason of the exemption. All laws exempting from taxation property other than the property enumerated in this article, shall be void. The provisions of this section exempting certain personal property of manufacturers, refiners, distributors, wholesalers, and retail merchants and establishments from taxation shall become effective, unless otherwise provided by law, in each county on January 1 of the year in which that county completes its first general reassessment as defined by law. [Emphasis added.]
Were we to conclude that the relevant part of Article III, Section 43, Missouri Constitution (1945), creates an exemption and is not merely a declaration of the intergovernmental tax immunity doctrine, there would necessarily be a conflict between ArticleIII, Section 43, Missouri Constitution (1945), and Article X, Section 6.1, Missouri Constitution (1982). Construing these provisions in harmony with each other, we conclude that the words "[n]o tax shall be imposed on lands the property of the United States; . . ." in Article III, Section 43, Missouri Constitution (1945), are merely declaratory of the intergovernmental tax immunity, and these words do not create an exemption which would prevent Missouri taxation of federal lands when the United States has waived its intergovernmental tax immunity.
CONCLUSION
It is the opinion of this office that the phrase "[n]o tax shall be imposed on lands the property of the United States; . . ." in Article III, Section 43, Missouri Constitution (1945), is merely a declaration of the intergovernmental tax immunity doctrine and does not create a tax exemption for purposes of7 C.F.R. Section 1955.63(f)(1)(1983). When Congress has waived its tax immunity and consented to the taxation of its lands — as it has done with regard to land owned by the Farmers Home Administration in 42 U.S.C. § 1490h (Supp. IV 1980) — Article III, Section43, Missouri Constitution (1945), does not preclude state or local taxation of these federal lands.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] We interpret the federal statute quoted above as making Farmers Home Administration property taxable in the same manner and to the same extent as other property is taxed under state law. We find it difficult to see how a federal agency can interpret Missouri law through the promulgation of a federal rule. So far, the validity of this federal rule has not been challenged. See Dawson v. Childs, 665 F.2d 705, 711 (5th Cir. 1982).