## GIBBS et ux. v. UNITED STATES.
### No. 5371.

Circuit Court of Appeals, Fourth Circuit.

July 13, 1945.

J. C. B. Ehringhaus, of Raleigh, N. C., and R. E. Whitehurst, of New Bern, N. C., for appellants.

Lawrence Vold, Atty., Department of Justice, of Washington, D. C., (J. Edward Williams, Acting Head, Lands Division, Department of Justice, of Washington, D. C., J. O. Carr, U. S. Atty., and R. Brookes Peters, Jr., Sp. Asst. to the U. S. Atty., both of Wilmington, N. C., and Roger P. Marquis, Atty., Department of Justice, of Washington, D. C., on the brief) for appellee.

Before PARKER, SOPER and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

This is an appeal from a judgment in favor of the United States in a suit brought by it against H. S. Gibbs, Coastal Properties, Inc., and others to remove a cloud from title to certain real property. The facts are undisputed. The case was tried on the pleadings and exhibits therein referred to. The motions of the defendants to dismiss for want of jurisdiction and for summary judgment were overruled. The plaintiff's motion for summary judgment was granted.

The subject of the controversy is a tract of 6.16 acres of land. It is a portion of a larger tract of 415 acres that was condemned by the United States under the authority of the Lanham Act of October 14, 1940 as amended, 42 U.S.C.A. § 1521 et seq., for the Federal Works Agency for use as a housing project known as Midway Park in Eastern North Carolina. The purpose was to provide facilities for the housing of military and civilian personnel stationed at or connected with the Marine Base known as Camp Lejeune, to which the land was adjacent. Title to Midway Park was acquired by the United States on September 11, 1941, upon the filing of a declaration of taking in a condemnation proceeding pursuant to the Declaration of Taking Act, 40 U.S.C.A. § 258a.

By the Act of January 21, 1942, 56 Stat. 11, 12, 42 U.S.C.A. § 1524, the Lanham Act was amended to provide that the Federal Works Administrator "may, in his discretion, upon the request of the Secretaries of War or Navy transfer to the jurisdiction of the War or Navy Departments such housing constructed under the provisions of this Act as may be considered to be permanently useful to the Army and Navy." On February 24, 1942, by Executive Order No. 9070, 7 F.R. 1529, 50 App. U.S.C.A. § 601 note, issued under authority of the First War Powers Act of December 18, 1941, 55 Stat. 838, 50 App.U.S.C.A. § 601 et seq., all the functions, powers and duties of the Federal Works Administrator relating to defense housing were transferred to the National Housing Administrator. Paragraph 6 of that order trans-

ferred "all assets, contracts, and property" of the Federal Works Agency to the National Housing Agency. Congress ratified this transfer by the Act of April 10, 1942, 56 Stat. 213, 42 U.S.C.A. § 1564, which, by way of amendment to the Lanham Act, provided that the term "Federal Works Administrator" should, with respect to housing, be deemed to refer to the "National Housing Administrator."

The power thus lodged in the National Housing Administrator to transfer housing to the Army or Navy was exercised on July 16, 1942 in a letter from the Administrator to the Secretary of Navy. The letter acknowledged a request, made on June 27, 1942 by the Secretary of Navy, that jurisdiction of the project in question be transferred to the Navy Department. The letter then stated: "In view of your determination that this project is considered as permanently useful to the Navy, I hereby transfer such project to the jurisdiction of the Navy Department to be effective on August 1, 1942." The concluding paragraph of the letter stated the statutory authority for making the transfer.

This letter received no publicity and did not appear in the Federal Register, and the existence of the transfer was unknown to the commanding officer of the Marine Base. On March 31, 1943, he wrote to the regional director of the National Housing Agency requesting him to "do all that is possible to expedite the erection of commercial facilities at Midway Park." The commanding officer pointed out that there was a lack of commercial facilities for tenants of the project and that the nearest shopping center was unable to cope with the needs of an expanded population. The regional director referred this request to the Eastern North Carolina regional director with the suggestion that local business men who were known to be interested in developing commercial facilities be asked to submit proposals for the construction of commercial facilities at Midway Park. Negotiations to this end were carried on and on May 18, 1943, nearly ten months after the effective date of the transfer of jurisdiction to the Navy, a deed was executed on behalf of the United States of America Federal Public Housing Authority, by the Federal Public Housing Commissioner, which purported to convey to the defendants H. S. Gibbs and wife the 6.16 acre tract in suit. The deed restricted the use of the land to commercial facilities and contained requirements relating to the type of buildings to be constructed, the date by which construction must begin and the date of completion.

On June 7, 1943, the defendants Gibbs and wife conveyed a portion of this land to the defendant Powell and the remainder to Coastal Properties, Inc. Coastal Properties, Inc., proceeded to obtain the necessary building permits, certificates and priorities and by January 27, 1944, actual construction was ready to begin. On January 31, 1944, Coastal Properties was notified that the Navy Department was questioning the validity of its title. Some attempt was made to iron out the difficulty but on August 24, 1944, the United States instituted the present action to have the defendants' deeds declared void on the theory that the Commissioner had no authority to execute the deed by which defendants claim title since the prior transfer to the Navy had removed his power of disposition. The sum of $1,848, which represented the consideration paid by Gibbs and wife, was paid into court. On December 14, 1944, the District Court entered judgment in which it ordered annulment of the deeds, quieted title of the United States, and awarded the sum paid into court to Gibbs and wife.

Two questions are raised on appeal. The first relates to the jurisdiction of the District Court to try the action, and the second relates to the validity of the transfer of jurisdiction to the Navy Department. The contention that the District Court was without jurisdiction to try the present suit has its basis in the Lanham Act under which the land in controversy was acquired. Section 1 of that Act, 42 U.S.C.A. § 1521, provides that in order to provide housing for persons engaged in national-defense activities in areas where a shortage of housing would impede national-defense activities, the Federal Works Administrator (now the National Housing Administrator) is authorized (a) to acquire land by purchase, donation, exchange, lease or condemnation and (b) upon land so acquired to construct, extend, remodel, etc. housing facilities and to provide transportation, utilities, etc. in connection therewith. Section 2 of the Act, 42 U.S.C.A. § 1522, defines the phrase "persons engaged in national-defense activities" and continues: "Provided, That any proceedings for the recovery of possession of any property or project developed or constructed under this subchapter shall be brought by

the Administrator in the courts of the States having jurisdiction of such causes and the laws of the States shall be applicable thereto; * * *."

■ The defendants point out that the present suit was brought in order to secure a judgment that the United States is "the owner and entitled to the possession of the land" in question. Hence it is said that jurisdiction lies in the state court under the quoted provisions of the Lanham Act and not in the federal court under the provisions of section 24 (1) of the Judicial Code, 28 U.S.C.A. § 41(1), which confers general jurisdiction upon the District Courts of all suits of a civil nature brought by the United States. We do not think that this contention is tenable. The primary purpose of the present suit by the United States was to remove the cloud cast upon its title to the land by the deed from the Housing Authority to Gibbs and his deed to the other defendants. The reference in the complaint to the right of the United States to possession of the land was only incidental to the main purpose of the suit and did not oust the federal court of jurisdiction. The provision of the Lanham Act referred to was inserted, as the legislative history shows, so as to require eviction proceedings to be brought in the state courts and thus save tenants, whose ouster should be sought, from the necessity of attendance upon federal courts which might be distant from their homes. See 87 Cong. Record, p. 9278. There was no need for eviction proceedings in the pending controversy for there were no buildings and no tenants on the land when the suit was brought. It should also be noticed that the present suit was brought by the United States and not by the Administrator and that it is only with regard to suits brought by him to recover possession of property developed under the Housing Act that exclusive jurisdiction is given to the state courts.

We come to the merits of the case and to the contention of the defendants that the transfer of jurisdiction over the project from the Administrator to the Navy Department on July 16, 1942, did not deprive the Housing Authority of power to execute the deed of May 18, 1943, now sought to be set aside, or justify the judgment of the District Court which declared the deed invalid. Three reasons are given in support of this contention.

■ First, it is said that the jurisdiction which the Administrator is authorized by the statute, 42 U.S.C.A. § 1524, to transfer to the Army or Navy is merely the power to exercise police control over an area, and does not include the power to dispose of the property, which power, it is said, was retained by the Administrator. It is pointed out that under Executive Order No. 9070 of February 24, 1942, above referred to, the functions, powers and duties of the Federal Housing Administrator were consolidated into the National Housing Agency, 50 App.U.S.C.A. § 601 note, and thereafter, to-wit, on April 28, 1942, by Executive Order 9150, 7 F.R. 3217, 50 App.U.S.C.A. § 632 note, issued under authority of the Second War Powers Act of March 27, 1942, 56 Stat. 176, 50 App.U.S.C.A. § 632, the Commissioner of the National Housing Agency was authorized to acquire and dispose of real property; and it is contended that this power of disposition was not lost when the Administrator merely conveyed jurisdiction over the area to the Navy. We think that this is too narrow a reading of the term jurisdiction. Obviously the addition to the Lanham Act of January 21, 1942, which authorized the Federal Works Administrator in his discretion to transfer to the Army or Navy Department jurisdiction over such housing "as may be * * * permanently useful to the Army or Navy", did not contemplate that the transferor thereafter would retain any control or power of disposition of the property. Such a retention of control or authority would be inconsistent with the permanent use of the area by the military or naval establishment.

■ Second, it is said that the Administrator had power under the Act of January 21, 1942, to transfer only "housing constructed", and it is pointed out that no housing had been constructed on the six acre tract in suit. Here again the meaning of the Act is distorted by too narrow a construction. The total Midway project involved 415 acres and houses had been built thereon and it was desired that places of business should be erected on the land in suit in order to serve the occupants of the rest of the area. Obviously this small area, although still vacant, was part of the whole project under development, and as such, subject to the Administrator's power of transfer within the phrase "housing constructed under the provisions of this

Act", even if the phrase should be given a narrow construction. Moreover, it seems clear that the phrase was not intended to limit but merely to describe the class of projects subject to transfer.

■ It is said that the Administrator's transfer to the Navy Department was invalid because the transfer was not recorded upon the land records of the State in accordance with the statutes thereof. There was no occasion for such recordation. The title to the land stood in the name of the United States by reason of the condemnation proceedings and it remained in the United States after jurisdiction over the property had been transferred by the Administrator to the Navy Department. The effect of that transfer was to take the property out of the control of one and to lodge it in the control of another set of government officials, while the title remained in the same status as it had been before.

Congress, in whom alone resides power to dispose of property of the United States, Sioux Tribe of Indians v. United States, 316 U.S. 317, 62 S.Ct. 1501, 86 L.Ed. conferred power upon the Administrator to sell and convey housing property or in his discretion to transfer jurisdiction thereof to the Navy Department. Congress did not require that such a transfer to the Navy should be recorded among the land records of the state or even published in the Federal Register. The failure to record or publish the transfer of jurisdiction did not invalidate it.

■ It is our view that when the discretion of the Administrator was exercised and jurisdiction was transferred, the power of the Administrator to dispose of the property ceased to exist. It is therefore obvious that the defendants in the pending case obtained a deed to property of the United States from officials whose authority over it had terminated, and that the deed had no legal validity. There is nothing in the record to suggest that the defendants have not acted throughout in perfect good faith, and it is unfortunate that through some one's neglect the Housing Authority has assumed to exercise a power which it did not possess, and has caused the defendants inconvenience if not substantial loss which may not be completely offset by the return of the purchase price paid into court. These matters, however, cannot be adjudicated in this case.

We decide only that the judgment of the District Court should be affirmed, leaving the defendants free to take such further action against the United States as they may see fit to pursue.

The judgment of the District Court is affirmed.