**UNITED STATES of America**

v.

**Marie C. HANLON, City Treasurer of New Castle, Pennsylvania, et al.**

Civ. A. No. 13667.

United States District Court
W. D. Pennsylvania.

Nov. 19, 1956.

Thomas J. Shannon, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

W. Denning Stewart, Pittsburgh, Pa., Leroy K. Donaldson, County Sol., Lawrence County, Robert White, City Sol., New Castle, Pa., for defendants.

**WILLSON, District Judge.**

In this case the government seeks a judgment of this court declaring null and void certain tax assessments made by the defendants on property situate in the City of New Castle, Lawrence County, Pennsylvania, together with an order directing defendants to remove the properties from the tax rolls of such city and to refrain from levying taxes upon said property and for such further relief as this court may find the plaintiff to be entitled.

This case appeared on my non-jury trial list. The facts were presented to the court upon an agreed written statement. Thereafter counsel for all parties were heard at oral argument. The property may be briefly described as a government surplus industrial facility known as Plancor 765, constructed in 1942 by the Defense Plant Corporation at a cost of $23,000,000. During the war it was operated by United Engineering and Foundry Company as a government contractor. The property was declared surplus to War Assets Administration by Reconstruction Finance Corporation, successor to Defense Plant Corporation, March 1, 1956; and accountability therefor was accepted by War Assets Administration effective as of May 1, 1946. United Engineering and Foundry Company was in continuous possession of the property from the time of the declaration of surplus until December 31, 1953 under a series of leases, all of which required payment by it of local taxes. A new one-year lease was entered into effective January 1, 1954, which omitted the requirement for payment of local taxes by United. It appears that for the years 1943 to 1953, inclusive, United paid to the City of New Castle and the County of Lawrence, all taxes assessed against the property, amounting to $1,222,824.20.

It appears that the obligation on the part of United as lessee to pay local taxes was deleted from the new lease of January 1, 1954 in recognition of the rule announced in the case of Board of Commissioners of Sedgwick County, State of Kansas v. United States, 105 F. Supp. 995, 123 Ct.Cl. 304, a decision of the United States Court of Claims decided July 15, 1952, to the effect that liability of property to taxation under circumstances similar to those in this case is dependent upon the government corporation both holding legal title to and having full control and dominion over the property sought to be taxed. The Administrator of the General Services Administration has acknowledged that in order to insure the tax exempt status of the property he caused to be recorded on December 15, 1953 in Lawrence County a quitclaim deed by which legal title was conveyed from the Reconstruction Finance Corporation, successor to Defense Plant Corporation, to the United States of America. It is noticed at this point that the deed had been executed June 13, 1950, but not recorded until three and one-half years later, in Deed Book Volume 376, page 596, Lawrence County records, and entered of record in the New Castle City Registry Department on December 21, 1953. The deed conveys land described as containing approximately 50.171 acres of land, together with buildings, improvements, appurtenances, etc.

Paragraph 10 of the agreed statement of facts is a letter under date of October 11, 1954 from the Administrator of the General Services Administration to the Acting Comptroller General, in which the Administrator summarizes the gov-

ernment's then position and says in part:

"Notwithstanding the decision in the Sedgwick County case and the vesting of legal title in the United States, the City of New Castle has made demand for payment of the 1954 taxes."

However, subsequently, and on July 19, 1956, the government sold the property which is the subject of this suit to the Mesta Machine Company, a Pennsylvania corporation. In its deed to Mesta there is no warranty of title, the language of the deed being:

"This Deed is executed and delivered to the Grantee, herein, its successors and assigns, without warranty, express or implied, anything herein contained to the contrary notwithstanding."

The foregoing brief review of the factual situation is necessary in order for this court to clearly indicate why it has come to the conclusion that the pleadings and the facts agreed upon present no justiciable issue or controversy for this court to decide.

Defendants in their amended answer seeking dismissal, paragraphs 12, 13 and 14, aver that by the sale and transfer of the Plancor No. 765, the tax liability attached to the land and hence passed to the present owner, the Mesta Machine Company, and that by reason thereof the sovereign immunity from local taxation claimed by the plaintiff cannot now be asserted on behalf of Mesta Machine Company. Defendants say also in their answer that plaintiff, being no longer the owner of the land and hence with no property interest in it, has no liability for the payment of property taxes and plaintiff is not a proper party to this suit.

It becomes necessary, therefore, to examine the complaint as amended. The complaint was filed July 29, 1955. In it the government avers ownership, the assessment of taxes and seeks a judgment of the court for relief, specifically to declare the taxes and assessments null and void and to restrain the local authorities from further assessing taxes or levying upon the property. The complaint mentions the 1954 and 1955 taxes. The amended complaint filed October 18, 1955 recites the chain of title to the property in more detail than the original complaint and makes reference to defendants' acting through their officers, agents and employees. The meat of the amendment, however, is the recital of the title and recording of the deed as heretofore mentioned. On July 13, 1956, the plaintiff presented a petition to again amend the complaint. The amendment was granted and this added to the complaint the 1956 taxes which by that time had been assessed and levied by the local authorities.

A final petition to amend was filed on August 16, 1956, and on the same date was allowed by a judge of this court, the order reading as follows:

"And now, this 16 day of August, 1956, upon consideration of the within Petition, and it appearing to the Court that justice requires the amending of the Complaint, it is hereby ordered that the same be amended by adding a new paragraph to be known as paragraph number VII, as follows:

"VII. The United States of America on July 19, 1956, sold the property which is the subject of this suit to the Mesta Machine Company, a Pennsylvania corporation."

This court recognizes the principle that the Federal government is constitutionally immune from taxation or regulation by the several states. Van Brocklin v. State of Tennessee, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845, expressly held that the constitutional immunity applied to taxation by the state of lands owned by the United States. In Clallam County v. United States, 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328, the Supreme Court declared that the immunity from state taxation also applies to corporate instrumentalities of the United States.

However, in the instant case with respect to real property owned by

the Reconstruction Finance Corporation, an instrumentality of the government, and its wholly owned subsidiary, the Defense Plant Corporation, Congress has waived the right to immunity in the following terms:

"* * * any real property of the Corporation shall be subject * * * to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed * * *." Act Jan. 22, 1932, § 10, 47 Stat. 10, as amended by Act June 10, 1941, § 3, 55 Stat. 248, 61 Stat. 205, § 8, 15 U.S.C.A. § 607.

■ This court also recognizes that while real property is owned by the United States it may bring an action in a district court to remove a cloud cast upon its title to land or any interest in land which it owns. See Clallam County v. United States, supra; and Gibbs v. United States, 4 Cir., 150 F.2d 504.

In the instant case, had it not been for the final amendment to the complaint, which showed that on July 19, 1956 the United States sold the property to Mesta, this court would unhesitatingly declare the invalidity of the local tax assessments for the years mentioned. However, at this point it is noticed that Congress on August 12, 1955, enacted legislation providing for the payment of certain sums "in lieu of taxes," on government surplus property. The instant property is one of them. 40 U.S.C.A. § 521 et seq. Section 523 being applicable here directs "* * * the Government department which has custody and control of such real property shall pay to the appropriate State and local taxing authorities an amount equal to the amount of the real property tax which would be payable to each such State or local taxing authority on such date if legal title to such real property had been held by a private citizen on such date and during all periods to which such date relates." However, in the statute the beginning date is January 1, 1955 for the payment of taxes by the government department to the local municipalities.

■ Thus in the instant case Congress has directed the payment of the 1955 and 1956 taxes so there is no controversy for this court to decide as to those years. The government having parted with its title, the question is moot as to the 1955 and 1956 taxes. The situation is the opposite of that found in United States v. Lewis, D.C., 10 F.Supp. 471, where the court held that a government claim of interest in the controversy was real and substantial and that the United States was authorized to join in a suit for the purpose of asserting and protecting its immunity and the immunity of its agent the R.F.C. from state and local taxation.

■ This court is convinced that under the pleadings and proof as presented, there is no justiciable issue for decision. It is realized that the defendants would like a dismissal of the action, but on the ground that the government has no standing to bring the suit either by reason of an adjudication that the taxes as assessed and levied are valid or on the ground that the government seeks equity in the instant case and that under the facts as presented it is not entitled to equitable relief. The latter ground is based on the fact that in the lease to United of January 1, 1954, the government required United to pay as additional rental the amount it formerly paid the local authorities for taxes, thus giving the United States a "windfall." This is because it appears from the facts agreed upon that the government has received from United an amount equal to the 1954 taxes as additional rental for the same year and the United States has not paid such additional amount to the local authorities in lieu of taxes. Defendants say that the Administrator of the General Services Administration made a smart move which benefits the United States, but at the expense of the City of New Castle. It is believed that a strong argument can be made on behalf of the defendants that the government under the particular circumstances here may have waived its sovereign immunity by collecting an amount equal

to the taxes and retaining it. On the other hand, it is noticed that in the correspondence between the government departments referred to in the agreed statement of facts, the Comptroller General has ruled that the General Services Administration could not disburse such funds to the defendants in lieu of taxes because of the Sedgwick County decision. Any relief to the local authorities the Comptroller General ruled was to be provided by Congress. As noted, Congress provided relief for the years 1955 and 1956, but not for 1954.

What has been said, then, brings up the final point to be discussed. In its reply brief filed after oral argument, the government states the present issue to be:

> "It is the contention of the United States that as purchase money mortgage, it has a title which is being clouded by the tax assessments which are illegal."

Thus we have a lawsuit where the government in its complaint and in its amended complaint up to the last paragraph of the last amended complaint alleges ownership of property which it says is the subject of illegal tax assessments by local authorities. The last amendment to the complaint, however, takes title out of the government with no warranty to the purchaser. The sale took place during the course of the litigation. Up to the final amendment the government's claim for relief was against illegal tax assessments against government property. There is no mention in the complaint or in any amendment thereto of a purchase money mortgage or any other mortgage, title to which is being clouded by the tax assessments. It is unique and rather startling for the government in this case to present at the trial of the case a claim for relief not based upon any of the averments in the complaint or in any of the amendments thereto.

The government counsel in his brief lays great stress upon a Court of Appeals decision of this circuit, Gregg v. Sanford, 3 Cir., 65 F. 151, at page 156, in which the following language appears:

> " * * * The books are replete with cases in which equity has interposed to prevent or cancel a cloud upon title to land arising from illegal tax assessments or sales thereunder, or from tax deeds, where the proceeding sought to be enjoined or set aside was prima facie valid, and it was necessary to prove extrinsic facts to show its illegality. [Citing cases.] The supreme court of the United States, in Gage v. Kaufman, 133 U.S. 471, 10 S.Ct. 406, 33 L.Ed. 725, proceeding as well upon general equitable principles as upon the Illinois decisions, sustained a bill in equity to remove a cloud upon title created by a tax deed. In Union Pac. Railway Co. v. Cheyenne, 113 U.S. 516, 525, 5 S.Ct. 601, 28 L.Ed. 1098, the court distinctly ruled that a bill charging that the collection of * * * suits as to the title of lots being laid out and sold, which would prevent their sale, and would cloud the title to all the plaintiff's real estate, states a case for relief in equity. * * * "

This court certainly in general, agrees with the statements of the Court of Appeals in Gregg v. Sanford, but the language used is not applicable under the pleadings and facts presented in the instant case.

At the oral argument the court interrogated counsel on both sides as to the justiciable issue which was to be decided. Counsel indicated that the agreed statement of facts presented an issue for decision. The agreed statement of facts is set forth in sixteen paragraphs. Paragraph 15 is the only one which infers that a title to real property is being clouded by tax assessments. The government says its present and existing interest in the real property is being clouded by the local tax assessments because (1) of the provisions of the side agreement referred to in paragraph 15 of the agreed statement of facts, but which appears in defendants' answer as

defendants' Exhibit A, and (2) a purchase money mortgage.

### 1. The Side Agreement

It appears that contemporaneously with the deed of July 19, 1956 the United States, represented by the Administrator of General Services, and the Mesta Machine Company entered into an agreement which is the "side agreement" referred to. This instrument recites the sale of the property. It recites that local taxes for the years 1954 and 1955 claimed by the government to be unlawfully assessed against the property are unpaid. It refers to this civil action commenced by the government which was then pending in this court. It refers to the conditions of the purchase offer between the parties whereby it was agreed that the government:

" * * * will continue prosecution of the litigation, and should a final judgment adverse to the Government be entered, assume liability for payment of such taxes, and for the taxes, if any, for the year 1956 apportioned as of the date of delivery of title."

The parties recite further that in this agreement the parties "desire * * * to set forth in a more definitive manner their respective rights and obligations under * * * Item 5 of the Purchase Offer." The government then reiterates the understanding that it will continue the prosecution of this litigation " * * for the purposes, among other things, of having said taxes declared illegal and void and of no effect and to cause the defendants in said proceeding to remove the properties from the tax rolls and to refrain from further assessing or levying taxes for the years 1954, 1955 and 1956 against said properties." The contract then provides " * * * if a final judgment is entered adverse to the Seller, Seller will assume liability, as between the parties hereto, for the payment of taxes for the years 1954, 1955 and, subject to Buyer's fulfillment of its obligations provided by Section 2 hereof next following, 1956. * * * "

### 2. Purchase Money Mortgage

This is first referred to in the deed attached to the original complaint. The amount, however, is not stated, nor are the terms of payment, nor does the complaint or any amendments thereto indicate that the mortgage still exists. Neither does the complaint or any amendment thereto indicate whether the purchase money remains unpaid; and it may be added at this point that nowhere in the complaint or any amendment is any reference made to any interest in the property owned by the government except full title to the premises which, of course, ended with the sale of the property on July 19, 1956.

▮ Thus we have a situation where it seems to this court that the government continues to press this litigation without any definitive allegations of its interest in the property. If the government has an interest in the property which is being jeopardized by the assessment of taxes, then it should say so and do so clearly. It does not do so and says it isn't necessary to amend the complaint. It seems to this court that from the facts presented and from the oral argument that the real reason the government is proceeding with the litigation is because it agreed with Mesta to carry on the lawsuit. If the latter is the present basis for the continuance of this lawsuit, the government should say so. It seems to this court that under the whole picture as presented here, this business of the assessments being a cloud upon the purchase money mortgage is an afterthought on the part of government counsel. This court takes judicial notice of the fact that Mesta Machine Company is one of the large business corporations of the nation. The primary obligation of Mesta to pay the purchase price is evidenced by the note it gave the government. If the government security is jeopardized in anywise by the tax assessments, then the complaint should so indicate so that this court can make a definitive ruling. An agreement such as made here by the Administrator of General Services

Administration to carry on litigation for the benefit of a private corporation, unless approved by the Attorney General, the legal officer of the government, strikes this court as not being binding on the United States government. However, such an agreement might take on a very different aspect should it appear that the government security for the purchase price is tied into an agreement to clear the assessments and the purchase price is uncollectible unless the assessments are stricken, but again that problem is not presented in the instant case. It is this court's view that the last amendment to the complaint took the government out of court. In Harris v. Texas & Pacific Ry. Co., 7 Cir., 196 F.2d 88, at page 90, the court stated:

"* * * But jurisdiction of courts of the United States is limited to cases or controversies in law or in equity presenting justiciable issues, and such courts do not have power or jurisdiction to render purely advisory opinions for the guidance of litigants in future cases. * * *"

An appropriate order will be entered. The findings of fact and conclusions of law appear herein within the meaning of Fed.Rules Civ.Proc. Rule 52(a), 28 U.S.C.A.

Order

And now, this 19th day of November, 1956, for the reasons herein stated, Civil Action No. 13667 is dismissed and the clerk will enter judgment in favor of the defendants Marie C. Hanlon, City Treasurer of the City of New Castle, Pennsylvania; Frank Hill, County Treasurer of Lawrence County, Pennsylvania; Howard M. Burr, School Treasurer, City of New Castle School District, New Castle, Pennsylvania; Joseph W. Gilmore, M. M. Ingham and Arson Armond, County Commissioners, Lawrence County, Pennsylvania; County of Lawrence, Commonwealth of Pennsylvania; City of New Castle, Commonwealth of Pennsylvania; City of New Castle School District, Commonwealth of Pennsylvania; and County of Lawrence Institution District, Commonwealth of Pennsylvania, and against the United States of America, without prejudice.