UNITED STATES of America,
Plaintiff

v.

COUNTY OF LAWRENCE, City of New Castle, City of New Castle School District and County of Lawrence Institution District, Defendants.

Civ. A. 15769.

United States District Court
W. D. Pennsylvania.

April 17, 1959.

See also 164 F.Supp. 542.

308

Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Howard C. Klebe, Charles Dlugokenski, Robert White, New Castle, Pa., W. Denning Stewart, Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

In this case, the United States prays that this court declare certain taxes levied against real property owned by the Mesta Machine Company to be null and void. Pursuant to state law, defendants, that is, the County of Lawrence, City of New Castle, City of New Castle School District and the County of Lawrence Institution District, all of Pennsylvania, in this judicial district, levied 1954 real property taxes against property situated in New Castle, formerly owned by Defense Plant Corporation. Unless the real property in question is immune from local taxation, the taxes assessed and levied in the sum of $116,899.40 are liens against the property.

The case is presented on a written agreed statement of facts which are separately filed so that it is unnecessary in this opinion to set forth in detail all of the evidentiary facts.

In August, 1942, the City of New Castle conveyed the property here involved to Defense Plant Corporation for a nominal consideration. The grantee in the deed is recited as a corporation created by Reconstruction Finance Corporation pursuant to Section 5d of the Reconstruction Finance Corporation Act, 15 U.S.C.A. § 604. Under this act, 15 U.S.C.A. § 607, real property of RFC is subject to local taxation to the same extent according to its value as other real property is taxed. Defense Plant Corporation erected thereon Plancor 765 and leased the same to United Engineering and Foundry Company which operated it until the property was sold to Mesta Machine Company on July 19, 1956. The manufacturing plant erected on the property cost the government some twenty-three million dollars. During the war United Engineering manufactured defense material for the government, as well as other material for private consumption. After the war, United Engineering leased the property from the Reconstruction Finance Corporation, and carried on a private manufacturing operation for its own profit. It had the full beneficial interest in the property. Under a series of leases United Engineering agreed to pay local taxes on the property and did so through December

31, 1953. The leases required a minimum rental payment of $300,000 per annum with a profit-sharing right to the lessor running from 7 percent to as much as 11.6 percent of net sales.

At the outset, this court, of course, recognizes the decisions and principles in a long series of cases commencing with M'Culloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 and including Van Brocklin v. State of Tennessee, 117 U.S. 151, 6 S.Ct. 670, 29 L.Ed. 845, and the last of which are the three decisions found in 355 United States Reports, the first of which is United States v. City of Detroit, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed. 2d 424, and the others, United States v. Muskegon Tp., 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 and City of Detroit v. Murray Corporation of America, 355 U. S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441.

The recent decisions are not too helpful on the precise point at issue in the instant case, because the Michigan local taxes were assessed and levied under specific state statutes authorizing the local governments to tax the privilege to use and to occupy property otherwise exempt. It should be noticed, too, that United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 914, 88 L.Ed. 1209, is not too helpful in deciding the instant case, because the court ruled invalid a tax which the state did not contend was "anything other than the old and widely used ad valorem general property tax * * *." As the Supreme Court of Pennsylvania said in Homestead Borough v. Defense Plant Corp., 356 Pa. 500, 52 A.2d 581, it is, of course, fundamental that a sovereign may not be taxed without its consent, but, as that court said, when property has been laid open by the sovereign to local taxation, then the constitutional immunity is no longer applicable.

In the instant case, we commence the study of the facts on the basis that Congress did subject Plancor 765 to local taxation and that local taxes were paid by United Engineering until the year in question, 1954, because plaintiff, acting by heads of various owning agencies

required that the United Engineering & Foundry Corporation pay the local taxes. In a prior civil action before me, United States v. Hanlon, D.C., 165 F. Supp. 1, the 1955 and 1956 taxes were finally excluded because of the passage of Public Law 388, 40 U.S.C.A. § 523, which became effective January 1, 1955. In the declaration of policy of that Act, Section 701, 40 U.S.C.A. § 521, it is stated:

"The Congress recognizes that the transfer of real property having a taxable status from the Reconstruction Finance Corporation or any of its subsidiaries to another Government department has often operated to remove such property from the tax rolls of States and local taxing authorities, thereby creating an undue and unexpected burden upon such States and local taxing authorities, and causing disruption of their operations. It is the purpose of this title to furnish temporary measures of relief for such States and local taxing authorities by providing that payments in lieu of taxes shall be made with respect to real property so transferred on or after January 1, 1946."

In House Report No. 1453, submitted July 27, 1955, the Committee on Government Operations indicated the reasons why the enactment of the statute was desirable. The report, found in United States Code Congressional and Administrative News, Volume 2, Eighty-fourth Congress, 1955, page 3114, recites that Congress specifically made the real property of the Reconstruction Finance Corporation and its subsidiaries subject to state and local taxation to the same extent according to its value as other real property is taxed. The legislative history goes on to say:

" * * * Because of a ruling by the United States Court of Claims in 1952, and a subsequent ruling by the Comptroller General in the same year, certain real properties that had formerly been subject to local taxation have now been rendered

nontaxable by the local authorities. This is true whether complete legal title to real property has been transferred from a Government corporation to another Government department, or whether the Government corporation retains legal title and transfers custody, control, or accountability for the real property to another Government department. Thus, the real property which has been on the State and local tax rolls by specific provisions of an act of Congress has been taken off such tax rolls by a transfer to another Government department without any break in the chain of title being held by the United States. In the view of your committee this has resulted in the imposition of an unjustifiable financial burden upon communities. The nature and use of the commercial or industrial facilities involved has not changed. The Congress has already provided that these properties should be taxed when they are held by and under the exclusive control of the Reconstruction Finance Corporation. It, therefore, appeared just and necessary that provisions be made, as in this bill, at least on a temporary basis, to make payments in lieu of taxes until a comprehensive policy with regard to payments in lieu of taxes shall have been enacted by the Congress."

The Committee report refers to the Court of Claims case, Board of County Com'rs of Sedgwick County, Kan. v. United States, 105 F.Supp. 995, 123 Ct. Cl. 304, and a subsequent ruling by the Comptroller General. Plancor 765, New Castle, Pennsylvania, is the government designation for this property which is one of the properties referred to in the committee report.

Congress having waived the immunity of this particular property from local taxation, the point to be decided is whether that immunity continued to and including the year 1954. As the Sedgwick County case is the foundation of the

rulings of the Administrator of General Services and of the Comptroller General as well as the basis for the government's argument in the instant case, it is appropiate to quote three paragraphs from the opinion in that case. Commencing at page 1001 of 105 F.Supp., the court says:

"We believe, however, that the taxes for the year 1947 fall into a different category, as a result of the declaration of the property as surplus, and the acceptance thereof by the WAA on April 16, 1947, acting presumably under the authority conferred in section 11(d) of the Surplus Property Act.

"The law did not require that the RFC execute a deed of the property upon its transfer to the control of the WAA, and the RFC continued after April 16, 1947, as the 'owning agency' within the meaning of the Surplus Property Act—apparently as a matter of convenience to the Government and to minimize actual paper work and expense until the WAA made final disposition of the property. While a bare legal title for the use of the United States may have thus remained in the RFC from April 16, 1947, until February 25, 1948, when the property was transferred to the Department of the Air Force, nevertheless the entire responsibility for the care and handling, and disposition of the property was in the WAA during that period. United States v. Shofner Iron & Steel Works, 9 Cir., 168 F.2d 286, 287.

"The waiver of constitutional immunity from taxes of 'real property of the corporation' enacted with respect to the RFC in 1932, 47 Stat. 10, was undoubtedly intended to apply to that real property of the corporation held by it in the performance of the duties and responsibilities imposed upon it by law. But by the August 21, 1946, declaration of the property as surplus under the

Surplus Property Act, 58 Stat. 765, enacted some 12 years after 47 Stat. 10, the RFC declared that the property was surplus to its 'needs and responsibilities', and by the acceptance of April 16, 1947, was divested of all control and responsibility. At no time after the acceptance by the WAA on April 16, 1947, did the RFC or any of its employees have physical possession, control, or custody of the property. It had neither the use nor the right to use the property. It could not even withdraw the declaration of surplus property without the approval of the War Assets Administrator. 32 CFR, 1946 Supp. 8301.15(b)."

The following is a brief comparison of the facts and issues in the instant case and the facts in the Sedgwick County case:

| U. S. v. County of Lawrence | Sedgwick v. U. S. |
| --- | --- |
| District Court | Court of Claims<br>105 F.Supp. 995 |
| I. Complaint—Government seeks to strike off local tax lien on non-government property | I. Complaint—County sought money judgment against United States for tax assessed against realty for the years 1944, '45, '46 and '47. |
| II. Facts: | II. Facts: |
| 1. August, '42—deed to Defense Plant Corp. | 1. 1942—deed to Defense Plant Corp. |
| a. Realty/plant—subject to tax, 15 U.S.C.A. § 607<br>Lease to United Engineering & Foundry Co.—United to pay tax direct | a. Realty/plant—subject to tax, 15 U.S.C.A. § 607<br>Lease to Boeing—no provision for it to pay tax |
| 2. July, 1945—Defense Plant Corp. liquidated—to RFC | 2. July, 1945—Defense Plant Corp. liquidated—to RFC |
| a. Realty/plant—taxable, 15 U.S.C.A. § 607<br>Lease to United—United obligated to pay local tax | a. Realty/plant—taxable 15 U.S.C.A. § 607<br>Lease to Boeing—no provision for it to pay local tax; it did not pay tax |
| 3. September 4, 1947<br>Acknowledgment of transfer of accountability from RFC to WAA | 3. April, 1947<br>RFC owner |
| a. Under Sedgwick case non-taxable, but lease from RFC required United Engineering to pay taxes which it did pay | a. Authority and responsibility in WAA, and RFC *neither physical possession/control/custody /nor the right to use the premises* |

**312**

| U. S. v. County of Lawrence | Sedgwick v. U. S. |
| --- | --- |
| District Court | Court of Claims<br>105 F.Supp. 995 |

U. S. v. County of Lawrence — District Court

4. June 13, 1950
   Unrecorded deed RFC to United States
   a. Sedgwick holds such a deed unnecessary
   b. Taxes levied against realty. Lease to United Engineering requiring it to and it did pay local taxes

5. April 25, 1952
   a. Renewal lease by RFC as lessor, to United Engineering for a period of two years, to commence 1-1-51, ending December 31, 1953
   b. United Engineering as lessee required to and did pay taxes for '51 and '52.

6. December 15, 1953
   Quit claim deed from RFC to U. S. recorded in Lawrence County

7. July 13, 1954
   U. S. by Administrator of GSA leases to United Engineering for year 1954 commencing January 1. For the first time requirement that lessee pay local taxes is deleted. Instead an amount equal to local taxes is added as additional rent payable to the United States.

Sedgwick v. U. S. — Court of Claims, 105 F.Supp. 995

4. February, 1948
   RFC to United States
   a. Deed by WAA for RFC
   b. Deed was subject to taxes of '44 to '47
   c. Custody of property turned over to Air Force

   1. Tax assessment of the county made under statutory provision allowing such tax (In the instant case the statute is 72 P.S. § 5020.-201)

   2. No sums were paid in lieu of taxes on this property

———◇———

It is noticed here that the Reconstruction Finance Act waiving tax immunity on real property owned by it is not a wartime statute. It was passed in 1932, 15 U.S.C.A. § 601 et seq. This particular property was handled by the various government owning agencies in exactly the same manner from the erection of the plant in 1942 until it was sold to Mesta Machine Company in July, 1956, except for the deletion of the requirement in the contract executed July 13, 1954, that the lessee, United Engineering, pay the local taxes. There is nothing shown by the evidence in this record that the Surplus Property Administrator under the Surplus Property Act of 1954, after the property was declared surplus on September 4, 1947, actually assumed the care and handling of the plant. The real property continued in the possession of United Engineering under renewals of the original lease of 1942. The Surplus Property Administrator at no time executed a renewal lease. When the Surplus Property Act of

1944 was superceded by Chapter 10 of the Management and Disposal of Government Property Act, 40 U.S.C.A. § 471 et seq., enacted June 30, 1949, Plancor 765 went under the Administrator of General Services. The RFC and GSA acting for the United States executed a renewal lease on April 25, 1952, effective January 1, 1951 for a period of two years. This lease recited the original lease of April 15, 1942, and the series of leases thereafter and required United Engineering to pay the local taxes assessed and levied against the property for the years 1951 and 1952. For the year 1953, United Engineering was in possession under several supplements to the last-mentioned lease. As required, United Engineering did pay the local taxes to December 31, 1953. It continued in possession, but on July 13, 1954, plaintiff and United Engineering executed a lease renewal effective back to January 1, 1954, which renewed the 1951 lease and the supplements thereto (Exhibit 5). In this agreement for the first time the lessee was relieved of the obligation to pay local taxes against the real property. It is noticed at this point that the quit claim deed from RFC to the United States, dated June 13, 1950, was not placed on record in the Recorder's office of Lawrence County until December 15, 1953.

Pursuant to the renewal lease on July 13, 1954, United Engineering paid to the government $110,008.41, in additional rental in lieu of the local taxes which it had theretofore paid defendants. The sum paid is substantially the amount of local taxes levied by defendants for the year 1954. All of these taxes had been levied prior to the deletion from the lease made in the middle of the year, which relieved the lessee from the payment of local taxes. The government is frank to say that the July 13, 1954 agreement prevented United Engineering from receiving a windfall because of the Sedgwick County decision, the reason being mentioned in the letter of the Acting Comptroller General of October 11, 1954, set forth in paragraph 4 of the statement of facts. That decision, says the government, and the general law that real property of the United States is immune from taxation, requires this court to set aside the tax liens involved in this civil action.

But it seems to this court that there is no clearcut point in the instant case where tax liability ends and tax immunity commences. There was in the Sedgwick County case. For instance, the court says in Sedgwick, 105 F.Supp. at page 1001:

"* * * At no time after the acceptance by the WAA on April 16, 1947, did the RFC or any of its employees have physical possession, control or custody of the property. It had neither the use nor the right to use the property. It could not even withdraw the declaration of surplus property without the approval of the War Assets Administrator. 32 CFR, 1946 Supp. 8301.15(b)."

In the instant case, as in the Sedgwick case, the factual situation may have been such that the property after 1950 at least became taxable, but if so, the heads of the administrative agencies did not undertake to act in accordance with the principles in the Sedgwick County decision, even after it was announced on July 15, 1952. I hold that the execution and delivery of the quit claim deed and the recording of it made no change in the tax status of Plancor 765. The Surplus Property Act and the Act setting up the General Services Administration, 40 U.S.C.A. § 471 et seq., made a deed superfluous. If any authority is needed for the foregoing, the Sedgwick case is the authority. It is clear from many authorities that the sovereign may waive its tax immunity. Commencing as we do with taxability under the facts in this case, if it was not waived, Plancor 765 became exempt on September 4, 1947, which was the date of the acceptance of responsibility by the WAA (Exhibit 2). But the government in this case did not choose to insist upon continued tax immunity. It directed and subjected the property to local taxation by its lessee

United Engineering, from 1947 through and including 1953 and to July 13, 1954. On the merits of this controversy, then, I hold that the United States, prior to July 13, 1954, had not withdrawn its waiver of immunity from the imposition of local taxes on Plancor 765. Under Pennsylvania law, the property was placed on the assessment rolls for the year 1954 in the fall of 1953. 72 P.S. § 5020–401(e). All the local taxes were levied before April 13, 1954, when the tax of the school district of New Castle was levied. The government made no change in the taxability of this property from the erection of the plant until July 13, 1954. At the latter date, the government itself took over the amount of the local taxes. Congress has since directed that the 1955 and 1956 taxes be paid in accordance with the statute.

It seems appropriate to quote here from a decision of the Supreme Court, S. R. A. Inc. v. State of Minnesota, 327 U.S. 558, at page 561. 66 S.Ct. 749, at page 752, 90 L.Ed. 851, where the court says:

> "The supremacy of the Federal Government in our Union forbids the acknowledgment of the power of any state to tax property of the United States against its will. Under an implied constitutional immunity, its property and operations must be exempt from state control in tax, as in other matters. [Citing cases] This postulate, as a matter of federal law, forces final decision of the validity of claimed exemptions under this immunity upon this Court. [Citing cases] The impact of state taxation on federal operations may be so close and threatening as to compel judicial intervention to declare the state tax invalid, as in the M'Culloch case, or *so remote and incidental as to justify a federal court in refusing to relieve a taxpayer from a state tax*. Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. [3], 140 A.L.R. 615. *The line of taxability is somewhat irregular and has varied through the years*." (Emphasis supplied.)

On the merits the government asks that this court strike down the lien of these taxes. Under the factual situation, that does not seem fair, just or right. The government here was the owner of and renting a property declared surplus. Further, it seems to this court that the government, under the factual situation presented, was exercising a proprietary function. It appears inequitable to permit the government to impose, in the words of Congressional House Report 1453, an "unjustifiable financial burden upon communities" by striking off tax levies which the government directed its lessee to pay, when under state law, according to defendants, 72 P.S. § 5511.18, the lessee is liable for defendant's taxes. However, I do not decide that question.

The situation here is perhaps not that of a classical estoppel but certainly one giving rise to equitable estoppel. The principle is stated in 31 C.J.S. Estoppel § 138, as follows:

> "An equitable estoppel ordinarily may not be invoked against a government or public agency functioning in its governmental capacity; but where the elements of an estoppel are present it may be asserted against the government when acting in its proprietary capacity."

And further:

> " * * * As is sometimes stated, an equitable estoppel may be invoked against the United States, * * * in respect of acts done in its proprietary or private capacity, as distinguished from its governmental or public capacity in the strict scope of which it cannot be estopped; and a failure to observe this distinction or to recognize and point out the absence of one or more of the essential elements of a perfect estoppel may be the reason for decisions and dicta which apparently deny this applicability of the doctrine of equitable estoppel, especially as against a state

or the United States, for in some cases, it seems, the doctrine is less liberally applied against the United States or a state than it is against a municipal corporation."

On the merits of this controversy, this court holds that the government is not in a position to expect that this court will strike down the tax levies and liens involved in this civil action.

■ This court concludes that there is an additional fundamental reason why it will not grant the relief prayed for by the government: The Complaint says that the jurisdiction of the court is found on 28 U.S.C.A. § 1345. This is the general section stating that district courts have original jurisdiction in all civil actions commenced by the United States or by any agency or officer thereby expressly authorized to sue by act of Congress. Defendants say that there is no authority in law or equity for this suit. On July 19, 1956, the United States deeded the property in question to the Mesta Machine Company. It gave no warranty of title. To secure the purchase price, Mesta gave the government a note for seven and one-half million dollars, secured by a mortgage on Plancor 765. Previous to the deed, the government had filed in this court Civil Action No. 13667. In the agreement to purchase, dated April 20, 1956, ahead of the deed, the government acting by the Administrator of General Services alone and not by the Attorney General, agreed to prosecute Civil Action 13667 and have the 1954 and 1955 taxes "declared invalid, void and of no legal effect." In the event the final judgment was adverse to the government, it agreed to assume liability for the payment of taxes apportioned as of the date of delivery of the deed. Civil Action 13667 was commenced July 29, 1955 and was dismissed by me November 19, 1956.

■■ I held in that case that there was no justiciable issue for decision as the government did not own the property and had not warranted the title. There is nothing in the complaint in the instant action nor is there any evidence in the agreed statement of facts or elsewhere that the security for the payment of the purchase money is in any way jeopardized by the so-called tax liens against Plancor 765. It is true that the government says that the "National Security Clause" which was made a part of the deed to Mesta may be jeopardized by the tax liens. Such a possibility is so remote and incidental as not to justify this court in refusing to strike down these tax liens. See S. R. A. Inc. v. State of Minnesota, supra. Further, in the opinion of this court there is no justiciable issue between the government and these defendants. It is not a "case or controversy" within the meaning of the constitution, Article 3, § 2, in which the jurisdiction of the United States District Court may be invoked. Moreover, defendants assert before this court and this court will presume that the defendants will abide by their assertion, that they will not subject any interest of the United States in the property to tax sale or otherwise jeopardize the government's mortgage security. See United States v. 68,716 Square Feet, D.C., 79 F.Supp. 438, 441, where Judge Medina, while on the district bench, refused to strike off a tax lien absent any showing that New York City had proceeded against the property for collection of taxes. As Judge Medina said in his case, I say in this case, absent any showing to the contrary, I shall not presume that" these defendants "will fail to respect" their assertions.

This opinion is regarded as comprising both the findings of fact and conclusions of law pursuant to the provisions of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.